**STADTLANDER DRUG CO., INC., Plaintiff,**

v.

**BROCK CONTROL SYSTEMS, INC., Defendant.**

**Civil A. No. 94–376.**

United States District Court, W.D. Pennsylvania.

Aug. 15, 1997.

Ronald G. Backer, Frederick Ploner, Rothman, Gordon, Pittsburgh, PA, for Plaintiff.

Christopher C. French, David G. Kalber, Kirkpatrick & Lockhart, Pittsburgh, PA, James W. Hawkins, Joseph D. Wargo, Christen C. Carey, Christopher P. Galanek, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

CINDRICH, District Judge.

After a six day trial in this case, the jury returned a verdict on January 14, 1997 in favor of defendant ("Brock") on all plaintiffs ("Stadtlander") claims and Brock's counterclaims. Stadtlander then moved (twice) for judgment as a matter of law and for a new trial on a variety of issues under Federal Rules of Civil Procedure 50 and 59. For the reasons stated below, we will grant the motion for new trial with regard to Brock's claim for finance charges, and deny the remainder of the motions.

### I. Rule 50(b) Motions

Brock makes the general objection that Stadtlander failed to preserve its right to invoke Rule 50(b) when it made its motion for judgment as a matter of law at the close of Brock's case. The sum of Stadtlander's Rule 50 motion consists of the statement, immediately following a similar statement by Brock, "Your honor, at this time the Plaintiff would make a Rule 50 motion as well." Jan. 14, 1997 Transcript (Doc. No. 169) at 61. Stadtlander responds that its right to make a Rule 50(b) motion was preserved by its objections raised at the jury charge conference. In light of these temporally proximate objections, and since the case "was concluded under substantial time pressures"[1] because of the imminence of a previously scheduled criminal trial, Stadtlander invokes surrounding circumstances in seeking to escape a finding of waiver of its Rule 50 rights.

■ Rule 50(a)(2) states that

[m]otions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion *shall specify* the judgment sought and *the law and the facts* on which the moving party is entitled to the judgment. (Emphasis added.) The Third Circuit has stated, using the former terminology, that "[t]he specific grounds for a JNOV must be asserted in the motion for a directed verdict.... If the issue was not raised in the motion for the directed verdict at the close of all the evidence, it is improper to grant the JNOV on that issue." *Bonjorno v. Kaiser Aluminum and Chemical Corp.*, 752 F.2d 802, 814 (3d Cir.1984). Accord *In re Lower Lake Erie Iron Ore Antitrust Litigation*, 998 F.2d 1144, 1180 (3d Cir.1993); *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 183 (3d Cir.1992). "A motion for judgment as a matter of law pursuant to Rule 50(b) must be preceded by a Rule 50(a) motion *sufficiently specific* to afford the party against whom the motion is directed with an opportunity to cure possible defects in proof which otherwise might make its case legally insufficient." *Lightning Lube. Inc. v. Witco Corp.*, 4 F.3d 1153, 1173 (3d Cir.1993).

■ As is plain from the transcript, Stadtlander did not, at the close of Brock's case, specify the law and the facts entitling it to judgment, and it has not cited any other point in the trial where it was more specific.

Stadtlander's fallback position is to urge the court to examine the context of the surrounding circumstances for the "communicative content, 'specificity' and notice-giving function of an assertion," *Acosta v. Honda Motor Co.*, 717 F.2d 828, 832 (3d Cir.1983), to demonstrate its compliance with the spirit of Rule 50(a). In *Acosta*, counsel made a "less than illuminating" Rule 50 motion, but opposing counsel and the court apparently understood the grounds for the motion sufficiently to respond. *Id.* This case lacks even those somewhat focusing circumstances. Thus, we can accept the rule that we should examine the context of an imperfect Rule 50(a) motion for information about its sufficiency. Since this case lacks even the vague elements of

**1.** Stadtlander's Reply Brief in Support of Motion for Judgment as a Matter of Law and New Trial

Pursuant to Fed.R.Civ.P. 50 and 59 (Doc. No. 182) at 5.

context described in *Acosta,* however (the court and opposing counsel's response), there is not much for us to consider in applying the rule.

Stadtlander next asserts that the jury charge conference supplies the necessary context, and that courts have found Rule 50 satisfied when the issue in question was raised at the jury charge conference. *See. e.g., Scottish Heritable Trust v. Peat Marwick Main & Co.,* 81 F.3d 606, 610–11 (5th Cir.1996) (defendant's objection to proposed jury instructions "may satisfy" purposes of Rule 50(b) despite "[t]echnical noncompliance"; counseling against " 'slavish adherence' to the Rules"), *cert. denied,* —— U.S. ——, 117 S.Ct. 182, 136 L.Ed.2d 121. Stadtlander did raise the issues it seeks to have addressed now at the jury charge conference. Jan. 14. Tr. at 9, 23, 44.

■ What we take to be the law of this circuit, however, is that "[a] request for jury instructions may suffice to fulfill the requirement that a motion for directed verdict be made before granting a JNOV only if it is clear that the district court treated the request as a motion for directed verdict and ruled on it as such." *Bonjorno,* 752 F.2d at 814–15; accord *Chemical Leaman Tank Lines. Inc. v. Aetna Cas. & Sur. Co.,* 89 F.3d 976, 993 (3d Cir.1996) (citing *Bonjorno), cert. denied,* —— U.S. ——, 117 S.Ct. 485, 136 L.Ed.2d 379; *Mallick v. IBEW,* 644 F.2d 228, 234 (3d Cir.1981); *Lowenstein v. Pepsi–Cola Bottling Co.,* 536 F.2d 9, 11 (3d Cir. 1976). While taking the trouble to file a reply brief, Stadtlander did not cite this consistent controlling precedent, which Brock did cite, though not precisely for this point.[2] The transcript of the jury charge conference amply demonstrates that Stadtlander's objections were all made in the context of the court's instructions to the jury. Stadtlander has not cited, nor have we found, an occasion where the court considered Stadtlander's jury charge objections as being made under Rule 50.

Accordingly, we find that Stadtlander waived its entitlement to make a Rule 50(b) motion by failing to preserve its objections under Rule 50(a). First, the language of Rule 50 requires a moving party to specify law, facts, and the judgment sought. This was not done, though the volume and detail of Stadtlander's submissions before and during the trial demonstrated its vigilant concern with many other issues.[3] Second, to equate objections made during the charge conference with a Rule 50 motion is to collapse the distinction between Rules 50 and 51. The operation of these rules may at times bring about the same result. But Rule 50 is more closely related to Rule 56 than to Rule 51. *See* Advisory Committee Notes, 1991 Amendment. The requirements for a successful Rule 56 motion are well known, and, as the Rules are stated, consist of more than what might qualify as an objection to a jury charge.

Moreover, as Stadtlander argues in its Reply Brief, Doc. No. 182 at 5–6, "numerous sufficiency of the evidence issues raised by each party ... were argued at length at the charging conference...." Which of these did the parties intend to invoke under Rule 50? All of them? Then what purpose would Rule 50 serve? A party of course *could* invoke all such arguments in making a Rule 50(a) motion, and necessary supporting information "may be supplied by explicit reference to materials and arguments previously supplied to the court." Advisory Committee Notes, 1991 Amendment, Subdivision (a). But if Rule 50(a) has any effect, it must mean that the court and the opposing party are entitled to some signal that such arguments are being made in seeking judgment as a matter of law. Additionally, to accept that all arguments at a charge conference qualify as Rule 50 motions tends to foist on the court the task of searching the record for adequate support for such a motion, and deciding which argument involved an issue entitling a party to judgment, and which involved only

---

**2.** This confirms again one of the reasons for discouraging reply briefs, which are less than persuasive, as is any brief, when it fails to cite the law the court is bound to apply.

**3.** For example, in the midst of the trial, Stadtlander filed four briefs comprising 45 pages of argument and 26 exhibits in opposition to Brock's motions for judgment as a matter of law on particular issues. Doc. Nos. 160, 161, 162, 163.

an expression that a particular charge is a bad idea. As the Third Circuit has noted,

> [t]he provisions of the rule are clear. The lock has a large visible keyhole and the key to turn the lock is as plainly described as we believe to be possible. The rule has been in effect for a very considerable length of time. We do not see any reason to obfuscate a plain rule by adding a gloss to it to aid those who, for reasons unknown to us, have not seen fit to follow it.

*Lowenstein,* 536 F.2d at 12.

As to whether this approach is a "slavish adherence" to the Rules, the Third Circuit addressed a similar contention in *Mallick* by stating that:

> We, however, do not deem a rule whose underpinnings rest in the United States Constitution to be a mere technicality to be readily dispensed with. Moreover, judicial efficiency may be better served when jury verdicts receive the respect to which they are entitled under the Seventh Amendment.

644 F.2d at 234. The interests of uniformity, predictability, and fidelity to the Rules, and those who use them, are far better served when the court applies the rules as written. Litigants should not have to guess, from case to case, about how much adherence to the Rules will be considered slavish and therefore overlooked by a court, and how much adherence is proper. Stadtlander's objections to the jury charge will not be accepted as substitutes for a Rule 50(a) motion that mentions facts, law, and the judgment sought.

Finally, we acknowledge that the court closely scrutinized the parties' use of time, as is necessary with almost all trials, and Stadtlander's contention that it should not be penalized for following the court's direction is valid. As easy as this is for the court to say, however, we do not believe that the court's reminders, even at their sharpest, could have been interpreted as precluding a party from making a motion which is its right to make. Moreover, Stadtlander's perception of time pressures in part may be a function of how much time it believes is necessary to make a Rule 50 motion. The court's view is that a few minutes would have been sufficient, given everyone's familiarity with the case at that stage. We do not believe that the use of

a few minutes to make a focused Rule 50 motion would have provoked an adverse reaction from the court. Stadtlander's intensive approach to other parts of the trial, however, may have led it to believe that more than a few minutes was necessary.

We thus find that Stadtlander waived its entitlement to make a Rule 50(b) motion. It will have to pursue its likely appeal based on its Rule 51 objections.

## II  *Rule 59(a) Motions*

■ Stadtlander has also moved for a new trial on various grounds under Rule 59(a). "[T]he district court's power to grant a new trial motion is limited to those circumstances 'where "a miscarriage of justice would result if the verdict were to stand." '" *Olefins Trading, Inc. v. Han Yang Chem Corp.,* 9 F.3d 282, 289 (3d Cir.1993) (citations omitted). "[A] new trial may be granted even where judgment as a matter of law is inappropriate." *Wagner v. Fair Acres Geriatric Center,* 49 F.3d 1002, 1017 (1995). The Supreme Court has identified what grounds might justify a new trial:

> The motion for a new trial may invoke the discretion of the court in so far as it is bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.

*Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251, 61 S.Ct. 189, 194, 85 L.Ed. 147 (1940); *see also* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2805 at 54 (2d ed.1995).

■ At the outset, we note the Third Circuit's conclusion that "the failure to move for a directed verdict at the close of all evidence does more than limit an aggrieved party's remedy to a new trial. In this Circuit, it wholly waives the right to mount any post-trial attack on the sufficiency of the evidence." *Yohannon v. Keene Corp.,* 924 F.2d 1255, 1262 (3d Cir.1991). Thus, any arguments for new trial based on sufficiency of

the evidence will be foreclosed under Rule 59 for the same reason we found them foreclosed above under Rule 50(b).

### A. *Price as a Remedy*

■ Stadtlander's first contention in seeking a new trial rests on the theme it adopted throughout the trial: it paid large sums of money for detailed design specifications which it never received, as shown by the weight of the evidence. It claims that its failure to receive a finished product precludes Brock from claiming price as a remedy. We disagree. What detailed design specifications are, whether they were provided, when they were provided, whether they were modified, what role Stadtlander itself played in their production, whether Stadtlander's requirements changed, and many other similar questions were the subject of strongly disputed evidence. We are confident that these were proper jury questions, and the weight of the evidence is not such that a new trial is warranted on matters related to the detailed design specifications. This disposes of Stadtlander's contention that Brock was foreclosed from claiming the contract price with respect to the May 24, 1993 Agreement, which contention depends on whether the detailed design specifications, or the closest thing possible, were delivered.

### B. *Finance Charges*

■ Stadtlander also asserts that the jury's finding on its liability for finance charges was against the weight of the evidence and was an error of law. There is merit to the contention that Brock should not have been permitted to seek damages for finance charges. Stadtlander argues that: various attempts during discovery to elicit answers as to the damages Brock was claiming never revealed a claim for interest; Brock did not mention interest in its pretrial narrative statement, when the court's order required it to do so; and Brock did not even mention interest during its opening statement. Only in questioning the last witness and in its closing argument did Brock briefly raise the matter of interest, and provide the jury with a calculation, which the jury accepted in full. Jan. 14, 1997 Tr. At 91. Stadtlander objected to the reference to interest at the jury charge conference, *id.* at

46, and now contends that submission of Brock's finance charge claim to the jury was error.

Throughout the case Brock described its counterclaim damages as consisting of $213,215.70 owed under the May 24, 1993 Agreement, $153,583.83 owed under the October 18, 1993 Work Order, and $20,000 liquidated damages for Stadtlander's solicitation of Brock employee Martha Knight. Brock did not raise a claim for finance charges in its Answer and Counterclaim (Doc. No. 3), Answer to Amended Complaint (Doc. No. 27), or Answer to Second Amended Complaint (Doc. No. 83). Its brief in support of its motion for summary judgment limited the sum of its counterclaims to the figures cited above (Doc. No. 34 at 51). According to Stadtlander, and supported by transcript excerpts, Brock never revealed a claim for finance charges during discovery, despite relevant inquiries. *See. e.g.,* Appendix to Stadtlander's Motion, Doc. No. 172, at Tabs 12 and 13. Brock's Pretrial Narrative Statement did not include a claim for finance charges, though it unquestionably should have. Doc. No. 62 at 10 (sealed). Brock never mentioned finance charges in its opening statement to the jury. Only in questioning the last witness in the case did Brock mention the finance charges, which was then carried forward to a request for a corresponding award from the jury in Brock's closing argument.

Brock does not deny that it never raised the finance charge claim during the course of pretrial preparation. Instead, it argues that since the May 24 Agreement was the basis for part of Brock's counterclaim, and that all portions of the May 24 Agreement that might support a claim for damages, such as the finance charge provision, were fair game for jury consideration. Brock adds that Rule 15(b) permits pleadings to conform to the evidence when issues are tried by express or implied consent of the parties.

Stadtlander did not try the issue of liability for finance charges by express or implied consent, however. The issue of liability for finance charges was not mentioned until the waning moments of the trial. At that time Stadtlander objected to defending a claim for

finance charges, citing Brock's failure to previously raise the issue. *See* Jan. 14 Tr. at 46.

As the issue is now presented, upon reflection and in isolation from the many other matters that the court considered at the conclusion of the trial, it would be a miscarriage of justice to let the jury award for finance charges stand. The manner in which Brock obtained the award for finance charges implicates the very purpose behind the Federal Rules of Civil Procedure relating to pretrial preparation and trial, the court's pretrial orders, and the purpose of trials themselves— that claims be made, discovered, prepared, and tried openly. It is now apparent that Brock did not handle its claim for finance charges consistently with these Rules and orders. Moreover, as Stadtlander notes, only the May 24 Agreement provides for a finance charge. The jury award Brock received includes finance charges on the October 18 Work Order as well, another element of the verdict that may be unsupported when the facts are revealed.

Were we able to grant judgment as a matter of law on this issue we would be inclined to do so. Given our conclusions with regard to Stadtlander's Rule 50 motions, however, we believe we are limited to granting Stadtlander a new trial solely on the finance charge claim.

### C. *Commercial Impracticability*

Stadtlander also asserts that the court erred in charging the jury as to commercial impracticability, because "[c]ommercial impracticability requires supervening, unforeseen circumstances that are not the fault of either party." Reply Br. at 23. Since commercial impracticability is an affirmative defense, Stadtlander continues, Brock waived this defense by failing to assert it in its answers and pretrial statements.

The parties—primarily Stadtlander—did use the term commercial impracticability at the charge conference. Jan. 14 Tr. at 5–8. And the court did borrow and modify two sentences from the Georgia Commercial Code section on commercial impracticability in charging the jury on Brock's defense to non-performance. Compare O.C.G.A. § 11–2-615[4] and Jan. 14 Tr. at 132. But regardless of how the parties characterized the language in question, or characterize it now, the essence of the charge was to inform the jury that it was permitted to excuse Brock's nonperformance if Stadtlander's cooperation was a condition of performance, and that cooperation was not provided. It cannot be doubted that Stadtlander's cooperation was a condition to Brock's successful performance of its duties, given the subject matter of the contracts: software customized to Stadtlander's pharmaceutical business; and demonstrated by, among other things, the need for Brock to work on site, and the regular interaction among Stadtlander and Brock employees during the course of performance. We expressed this notion to the parties at the charge conference[5], and we find no error in the language of the charge. In short, what

---

**4.** Excuse by failure of presupposed conditions.

Except so far as a seller may have assumed a greater obligation and subject to Code Section 11–2–614 on substituted performance:

(a) Delay in delivery or nondelivery in whole or in part by a seller who complies with paragraphs (b) and (c) of this Code section is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

(b) Where the clauses mentioned in paragraph (a) of this Code section affect only a part of the seller's capacity to perform, he must allocate production and deliveries among his customers but may at his option include regular customers not then under contract as well as his own requirements for further manufacture. He may so allocate in any manner which is fair and reasonable.

(c) The seller must notify the buyer seasonably that there will be delay or nondelivery and, when allocation is required under paragraph (b) of this Code section, of the estimated quota thus made available for the buyer.

O.C.G.A. 11–2–615.

**5.** The court stated:

I think it's a principle of contract law, and I don't think it's an affirmative defense. It's part of the operative facts of the case; and I think even if we didn't tell the jury anything, if they believe that the Plaintiff in some way prevented the Defendant Brock from performing the contract, that they could find in favor of the Defendant for that reason.

Jan. 14 Tr. at 5.

Stadtlander labels commercial impracticability is no more than a condition to performance that, if interfered with by the buyer, supports the remedy of contract price.

### D. *Other Arguments*

Stadtlander makes several other arguments in concluding its motion and opening brief. It argues that its fraud claim and commercial extortion claim should have been permitted to reach the jury, and that the contractual limitation of liability provision of the May 24 Agreement should have been excluded as a matter of law. While Brock responds to these arguments, Stadtlander's reply brief does not address these responses.

The court granted summary judgment for Brock on the fraud claim in December 1995 because such claim was based on parol evidence, Doc. No. 73 at 16–20, and Stadtlander currently has referred to nothing that would lead to a different conclusion. The same applies to the commercial extortion claims, on which the court granted judgment as a matter of law for Brock because of the narrowness of these doctrines, and the absence of evidence that Stadtlander had no reasonable alternatives to continuing with Brock after its initial dissatisfaction with Brock's performance. See Jan. 13 Tr., Doc. No. 168, at 242. Our ruling allowing the jury to decide the applicability of the limitation of liability provision is not relevant post-trial, since the provision would only have limited the amount of Brock's liability to Stadtlander. Brock accrued no liability in this case.

An order consistent with this memorandum opinion will be entered.

### ORDER

In accordance with the accompanying memorandum opinion, plaintiff's Motions for Judgment as a Matter of Law and New Trial Pursuant to Fed.R.Civ.P. 50 and 59 (Doc. Nos. 170 and 175) are GRANTED to the extent that the court will conduct a new trial of Brock's claim for finance charges; the balance of the motions is DENIED. A status conference will be held on September 16, 1997 at 10:00 a.m. to determine the schedule for discovery and trial of the finance charge claim.