611 A.2d 238

Peter and Constance JULIANO, h/w

v.

JOHNS–MANVILLE CORPORATION, Keene Corporation, Southern Textile Company, Garlock, Inc., Owens Illinois Glass Company, Fibreboard Corporation, GAF Corporation, Owens–Corning Fiberglas, Corp., Pittsburgh Corning Corp., H.K. Porter Company, Inc., Armstrong World Industries, Inc.

Appeal of FIBREBOARD CORPORATION.

Superior Court of Pennsylvania.

Argued March 11, 1992.

Filed June 16, 1992.

Reargument Denied Aug. 25, 1992.

322

Richard T. Wentley, Pittsburgh, for appellant.

Suzanne Reilly, Philadelphia, for Juliano, appellees.

Before WIEAND, TAMILIA and CERCONE, JJ.

WIEAND, Judge:

■ In a reverse bifurcated trial, a jury awarded damages to Peter Juliano in the amount of two hundred thousand ($200,000.00) dollars for pulmonary and emotional injuries sustained as a result of exposure to asbestos fibers.[1] Fibreboard Corporation was one of twelve manufacturers subsequently found responsible for Juliano's injuries. Post-trial motions were denied, delay damages were assessed, and judgment was entered against Fibreboard in the amount of twenty-nine thousand, five hundred fifty-three and 34/100 ($29,553.34) dollars. Fibreboard appealed. It contends that the evidence was insufficient to show that Juliano had been exposed to asbestos products which it had manufactured and that the trial court inadequately instructed the jury on the standard of product identification necessary to establish causation. After careful review, we affirm the judgment entered in the trial court.

■ In considering the sufficiency of the evidence to sustain the verdict,

> we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences, and determine only whether the evidence introduced at trial was sufficient to sustain the verdict. *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 24, 521 A.2d 451, 454 (1987). See also: *Laniecki v. Polish Army Veterans Assoc.,* 331 Pa.Super. 413, 417, 480 A.2d 1101, 1103 (1984).

1. The jury declined to award separate damages to Mrs. Juliano.

*Cooper v. Burns,* 376 Pa.Super. 276, 280–281, 545 A.2d 935, 937 (1988). See also: *Lopa v. McGee,* 373 Pa.Super. 85, 540 A.2d 311 (1988); *Elder v. Orluck,* 334 Pa.Super. 329, 483 A.2d 474 (1984), *aff'd,* 511 Pa. 402, 515 A.2d 517 (1986).

*Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 573, 574 A.2d 1084, 1088 (1990). In a products liability action, a plaintiff "must establish that the injuries were caused by a product of the particular manufacturer or supplier." *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 190–191, 544 A.2d 50, 52 (1988), *allocatur denied,* 520 Pa. 605, 553 A.2d 968 (1988), citing *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). Thus, in an asbestos exposure case, plaintiff is required to establish that he inhaled asbestos fibers shed by the manufacturer's product. *Eckenrod v. GAF Corp., supra.* See also: *Taylor v. Celotex Corp., supra; Samarin v. GAF Corp.,* 391 Pa.Super. 340, 351, 571 A.2d 398, 404 (1989), *allocatur denied,* 524 Pa. 629, 574 A.2d 71 (1990). The "plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use." *Eckenrod v. GAF Corp., supra* citing *Pongrac v. Consolidated Rail Corp.,* 632 F.Supp. 126 (E.D.Pa.1985). See also: *Fiffick v. GAF Corp.,* 412 Pa.Super. 261, 603 A.2d 208 (1992); *Taylor v. Celotex Corp., supra; Samarin v. GAF Corp., supra.* In the absence of sufficient evidence demonstrating that plaintiff worked with or near the asbestos materials of a particular defendant, a jury cannot find, except by speculation, that it was a defendant's product which caused plaintiff's injury. Speculation, however, is an inadequate basis for recovery. Therefore, such evidence is a sine qua non for the plaintiff to recover.

Appellant has failed to provide us with a complete record of the proceedings in the trial court. Nevertheless, a review of the limited record furnished to us discloses sufficient evidence of Juliano's exposure to asbestos products manufactured by appellant to support the jury's verdict.

Juliano was employed by Sun Shipbuilding and Drydock Company (Sun Ship) from 1965 to 1973 as a chipper and tank tester. From 1973 to the time of trial, he was employed as a tank tester and pneumatic tool operator at the Philadelphia Navy Yard. By Fibreboard's answers to interrogatories and testimony by Harry Hoopes, a retired Fibreboard employee, Juliano was able to show that prior to 1971 or 1972 Fibreboard had manufactured a variety of asbestos products. Some were marketed by Fibreboard or its predecessor, PABCO. Between 1960 and 1972, Fibreboard had also sold asbestos products to Owens–Corning which had marketed the same under the trade name "Kaylo."

In order to show exposure to these Fibreboard products during his employment by Sun Ship, Juliano introduced testimony by Owen McPherson, a welder at Sun Ship from 1943 to 1976. McPherson testified that, although he had not known Juliano personally, he had worked on at least two of the same ships on which Juliano had worked, the Glomar Explorer and the Manhattan. McPherson testified that he recalled seeing PABCO and Owens–Corning products, with "asbestos" noted on the packaging, in use throughout the shipyard. These products, he said, had been used primarily for pipe insulation in the engine and boiler rooms of ships, the areas where Juliano had most frequently labored. Juliano testified that while working on the various ships he had regularly been exposed to dusty conditions created by the manipulation of asbestos insulation. Moreover, he specifically recalled using a paste form of "Kaylo."

This evidence established that Fibreboard asbestos products, including "Kaylo", had been in use at the time Juliano worked at Sun Ship and in the areas in which Juliano worked. He, personally, had observed the dusty conditions created by the manipulation of asbestos insulation materials within the engine and boiler rooms of the ships on which he worked, and he recalled using a form of "Kaylo." McPherson recalled the use of PABCO and Owens–Corning insulation throughout the ship yard and stated that these prod-

ucts had been used primarily in the areas where Juliano had worked. From this evidence reasonable persons could conclude, as this jury did, that appellant's asbestos products had been used in the areas on which Juliano had worked at Sun Ship. This was sufficient to establish a prima facie case against Fibreboard. See: *Taylor v. Celotex Corp., supra*, 393 Pa.Super. at 578–581, 574 A.2d at 1090–1091 (circumstantial evidence that defendant's products present on ships where plaintiff worked sufficient to show causation).

Plaintiff's product identification evidence is not rendered insufficient by rebuttal evidence showing that the rooster logo on PABCO's products, which McPherson had recalled seeing, had been discontinued in the early 1960's before Juliano went to work at Sun Ship. The weight and credibility of Fibreboard's evidence was for the jury to determine. Conflicts in the evidence were for the jury to resolve. *Morrissey v. Commw. Dept. of Highways*, 424 Pa. 87, 93, 225 A.2d 895, 898 (1967); *Keating v. Belcher*, 384 Pa. 129, 133, 119 A.2d 535, 538 (1956); *Person v. C.R. Baxter Realty Co.*, 340 Pa.Super. 537, 541 n. 2, 490 A.2d 910, 912 n. 2 (1985). Moreover and in any event, whether McPherson's observation of PABCO products necessarily coincided with the time of Juliano's employment at Sun Ship was not alone determinative, for Juliano personally recalled having used "Kaylo" while at Sun Ship. Therefore, plaintiff's testimony was alone sufficient to establish exposure to a product manufactured by appellant.

Whether Juliano produced sufficient evidence of exposure to appellant's asbestos products during his employment at the Philadelphia Naval Shipyard is more problematic. Juliano did not start work at the Philadelphia Shipyard until sometime in 1973, after Fibreboard had ceased manufacturing asbestos products. In view of Juliano's exposure to Fibreboard's products while employed at Sun Ship, however, this fact does not render the jury's verdict invalid. In *Cooper v. Burns*, 376 Pa.Super. 276, 545 A.2d 935 (1988), *allocatur denied*, 522 Pa. 619, 563 A.2d 888

(1989), the Superior Court spoke to the standard for reviewing a trial court's jury instructions and said:

> In reviewing a trial court's instructions to the jury, it is well settled that we must view the court's charge in its entirety to determine whether any prejudicial error has been committed. *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). "A trial court is not required to accept the precise language of points for charge submitted by counsel so long as the issues are defined accurately and the applicable law is correctly reviewed." *Spearing v. Starcher,* 367 Pa.Super. 22, 29, 532 A.2d 36, 40 (1987). See also: *Geyer v. Steinbronn,* 351 Pa.Super. 536, 554, 506 A.2d 901, 911 (1986); *Fish v. Gosnell,* 316 Pa.Super. 565, 580, 463 A.2d 1042, 1050 (1983).

*Id.,* 376 Pa.Super. at 283, 545 A.2d at 938. In instructing a jury, the primary duty of the trial judge is to clarify the issues and apprise the jury of the legal principles needed to decide the case. *Vaughn v. Philadelphia Transp. Co.,* 417 Pa. 464, 468, 209 A.2d 279, 282 (1965); *Graham v. Sky Haven Coal, Inc.,* 386 Pa.Super. 598, 609, 563 A.2d 891, 896 (1989), *allocatur granted,* 525 Pa. 603, 575 A.2d 568 (1990). The trial court has wide latitude in formulating its charge so long as it clearly and adequately covers the law pertaining to the issues raised by the evidence. *Kimmel v. Yellow Cab Co.,* 414 Pa. 559, 201 A.2d 417 (1964); *Sheehan v. Cincinnati Shaper Co.,* 382 Pa.Super. 579, 586, 555 A.2d 1352, 1356 (1989), *allocatur denied,* 523 Pa. 633, 564 A.2d 1261 (1989); *Jackson v. Spagnola,* 349 Pa.Super. 471, 480–481, 503 A.2d 944, 949 (1986), *allocatur denied,* 514 Pa. 643, 523 A.2d 1132 (1987).

A careful review of the jury charge in the instant case discloses that there was neither error nor inadequacy on the issue of causation. The trial court instructed the jury on the elements of strict liability and product identification as follows:

> However, for a manufacturer to be held to [sic] strictly liable, three elements must be present. One, defendant's

product must be defective; two, plaintiff's must have contact with the defective product; three, that contact must have caused plaintiff's disease or injury.

For example, if plaintiffs worked only in Maine and Defendants sold their products only in Florida, defendants would not be liable to plaintiffs even if their products were clearly dangerous and carried no warning. Accordingly, plaintiffs must establish more than asbestos' presence in the workplace generally. They must prove they worked where the product was used.

Later, the trial court added:

A particular product need not be the sole cause. Several factors may combine to cause an injury. It is plaintiff's burden to prove the frequency and nature of these exposures to defendant's products. When plaintiff is exposed to several asbestos products you must determine whether each manufacturer's products was [sic] a substantial contributing factor.

Finally, in summarizing its instructions on strict liability and in charging on the issue of negligence, the trial court twice again reiterated that plaintiff must prove actual exposure to a defendant's product in order to establish that the particular defendant caused injury.

We conclude, for the foregoing reasons, that the verdict was supported by competent evidence and that the jury was correctly instructed. The judgment entered on the verdict, therefore, must be affirmed.

Judgment affirmed.