

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-1999

# Greenleaf v. Garlock Inc

Precedential or Non-Precedential:

Docket 97-1820

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Greenleaf v. Garlock Inc" (1999). *1999 Decisions.* Paper 108.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/108

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 26, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 97-1820 and 97-1821

CHARLES GREENLEAF, JR., ALTERNATE EXECUTOR OF
THE ESTATE OF CHARLES GREENLEAF, SR.,
DECEASED; NAOMI GREENLEAF, IN HER OWN RIGHT

v.

GARLOCK, INC.; FIBREBOARD CORPORATION; CELOTEX
CORPORATION; OWENS CORNING FIBERGLAS CORP.;
OWENS-ILLINOIS GLASS CO.; EAGLE-PICHER
INDUSTRIES, INC.; JOHN CRANE-HOUDAILLE, INC.; A.W.
CHESTERTON; SEPCO CORP.; UNIROYAL, INC.;

OWENS CORNING FIBERGLAS CORP.;
OWENS-ILLINOIS GLASS CO.
Third-Party Plaintiffs

v.

HOPEMAN BROTHERS, INC.; COMBUSTION
ENGINEERING, INC.; ANCHOR PACKING CO., INC.;
ARMSTRONG WORLD INDUSTRIES, INC.; GREEN TWEED
& CO., INC.; MELRATH GASKET COMPANY, INC.;
MELRATH BASKET HOLDING CO., INC.;
PARS MANUFACTURING CO.,
Third-Party Defendants

        Owens Corning, Appellant,
        No. 97-1820

CHARLES GREENLEAF, JR., ALTERNATE EXECUTOR OF
THE ESTATE OF CHARLES GREENLEAF, SR.,
DECEASED; NAOMI GREENLEAF, IN HER OWN RIGHT

v.

GARLOCK, INC.; FIBREBOARD CORPORATION; CELOTEX
CORPORATION; OWENS CORNING FIBERGLAS CORP.;
OWENS-ILLINOIS GLASS CO.; EAGLE-PICHER
INDUSTRIES, INC.; JOHN CRANE-HOUDAILLE, INC.; A.W.
CHESTERTON; SEPCO CORP.; UNIROYAL, INC.;

OWENS CORNING FIBERGLAS CORP.;
OWENS-ILLINOIS GLASS CO.
Third-Party Plaintiffs

v.

HOPEMAN BROTHERS, INC.; COMBUSTION
ENGINEERING, INC.; ANCHOR PACKING CO., INC.;
ARMSTRONG WORLD INDUSTRIES, INC.; GREEN TWEED
& CO., INC.; MELRATH GASKET COMPANY, INC.;
MELRATH BASKET HOLDING CO., INC.;
PARS MANUFACTURING CO.,
Third-Party Defendants

       Garlock, Inc., Appellant,
       No. 97-1821

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 90-cv-01557)
District Judge: Honorable Marvin Katz

Argued September 15, 1998

BEFORE: STAPLETON and ROTH, Circuit Judges, and
LONGOBARDI,* District Judge

(Opinion Filed: April 26, 1999)

_____

* Honorable Joseph J. Longobardi, Senior United States District Judge
for the District of Delaware, sitting by designation.

Catherine N. Jasons
Robert N. Spinelli
W. Matthew Reber (Argued)
Kelley, Jasons, McGuire &
 Spinelli
1617 John F. Kennedy Boulevard
Suite 1400
Philadelphia, PA 19103
 Attorneys for Owens Corning
 Appellant in No. 97-1820

Fredric L. Goldfein (Argued)
David C. Weinberg
Deborah M. Knight
Goldfein & Joseph
111 South 15th St., 17th Fl.
Philadelphia, PA 19102
 Attorneys for Garlock, Inc.
 Appellant in No. 97-1821

Martin Greitzer (Argued)
Lee B. Balefsky
John M. Mason
Greitzer & Locks
1500 Walnut Street, 20th Floor
Philadelphia, PA 19102
 Attorneys for Appellees

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Garlock, Inc. ("Garlock") and Owens Corning Fiberglas Corp. ("Owens") appeal the District Court's orders denying their motions to alter or amend a judgment holding them liable for Charles Greenleaf, Jr.'s injuries in this strict liability asbestos products action. We address six of the issues tendered for resolution. Appellants argue that: (1) Pennsylvania's "one satisfaction" rule precludes Greenleaf's entire federal action; (2) issue preclusion prevents relitigation of damages in federal court; (3) the District Court's jury instructions inadequately informed the jurors

3

regarding Pennsylvania law; (4) inflammatory statements by plaintiffs' counsel prejudiced the jury; (5) there was insufficient evidence to support the jury's finding of liability on the part of Garlock; and (6) the jury's verdict absolving the non-appearing defendants of liability was against the clear weight of the evidence.[1]

We agree with the appellants that issue preclusion prevented relitigation of damages in this action and that a new trial is required to consider the non-appearing defendants' liability. We find appellants' remaining claims unavailing. Accordingly, we will reverse in part and affirm in part the District Court's orders.

I. Background

Naomi and Charles Greenleaf filed this diversity action in March, 1990, against ten defendants, including Owens and Garlock, both manufacturers of asbestos products. The complaint alleged that occupational exposure to asbestos products produced, or used by, the various defendants had caused Mr. Greenleaf to contract mesothelioma, a cancer caused exclusively by asbestos inhalation. Mr. Greenleaf sought damages for pain and suffering, and Mrs. Greenleaf sought damages for loss of consortium. Appellants filed answers denying responsibility and asserted crossclaims for contribution against all co-defendants.

Two months after filing their federal action, the Greenleafs filed a state action in the Delaware County Court of Common Pleas against five Pennsylvania defendants alleging identical claims. Unfortunately, Mr. Greenleaf died from mesothelioma soon thereafter, and Mrs. Greenleaf pursued his federal and state claims as executrix of his estate. In July, 1991, the Judicial Panel on Multidistrict Litigation stayed Greenleaf's federal action and transferred it, along with other pending federal asbestos related personal injury actions, to Judge Weiner in
_____

1. Our resolution of these issues makes it unnecessary to address appellants' arguments (1) that the award for loss of consortium was excessive, and (2) that the judgment must be altered to set-off the Manville Trust's share of the liability for Greenleaf's injuries.

4

United States District Court for the Eastern District of Pennsylvania.

While the federal action was stayed, Greenleaf pursued her state action, which proceeded to a reverse bifurcated trial in January 1995. Under this format, damages were considered in Phase I and liability in Phase II. The jury returned a Phase I verdict assessing damages of $151,870 for the estate, and $37,500 for loss of consortium. Greenleaf filed a motion for additur. Prior to commencement of Phase II, however, Greenleaf settled with the two non-bankrupt Pennsylvania defendants and executed releases in their favor. The record does not disclose the settlement terms. Pursuant to Greenleaf's request, the Court of Common Pleas marked the state action "settled, discontinued and ended" on January 24, 1995.

Two years later, Greenleaf reactivated this federal action. Appellants filed motions for summary judgment contending that Pennsylvania's "one satisfaction" rule barred relitigation of Greenleaf's asbestos claims in federal court, and alternatively that issue preclusion prevented relitigation of damages. The District Court denied both motions. Once again, trial proceeded in a reverse bifurcated format. Owens and Garlock were the only defendants to appear and actively participate in the trial.[2] The jury's Phase I verdict fixed damages at $250,000 for the estate and $1.6 million for loss of consortium. Greenleaf's trial presentation in Phase II focused primarily upon establishing their liability for Mr. Greenleaf's injuries. Appellants also presented evidence to prove the non-appearing defendants' liability on their crossclaims. The jury's Phase II verdict found Owens and Garlock exclusively liable for those damages and absolved all non-appearing defendants of liability for Greenleaf's injuries.

Appellants filed separate post verdict motions requesting judgment notwithstanding the verdict, a new trial,

─────────────────────────────────────────────────────────────

2. The District Court granted defendants John Crane Inc., Chesterton, Inc., and SEPCO's motions for summary judgment dismissing them from the action. The remaining defendants (Johns-Manville, Owens-Illinois, Uniroyal, Fireboard, and Hopeman Brothers) did not appear at trial.

remittitur, and modification of the judgment. These motions asserted numerous grounds for relief including claims that Greenleaf 's prior state settlement had preclusive effect upon this subsequent federal action, and that a new trial was required on appellants' crossclaims regarding the non-appearing defendants' liability. Owens and Garlock appeal from the District Court's orders denying these motions.

II. Discussion

A. Preclusive Effect of the Prior State Litigation

Appellants claim that Pennsylvania's "one recovery" rule barred Greenleaf 's entire action, and alternatively, that Pennsylvania's doctrine of issue preclusion estopped Greenleaf from relitigating damages in federal court. To determine the preclusive effect of Greenleaf's prior state action we must look to the law of the adjudicating state. See Huck v. Dawson, 106 F.3d 45, 48 (3d. Cir. 1997); O'Leary v. Liberty Mutual Ins. Co., 923 F.2d 1062, 1064 (3d Cir. 1991); Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988). We must give the acts of Pennsylvania's courts the same full faith and credit in federal court that they would enjoy in Pennsylvania's courts. See Gregory, 843 F.2d at 116 (citing 28 U.S.C. S 1738). Because the District Court's application of these doctrines solely involves questions of law our review is plenary. See Huck, 106 F.3d at 48; O'Leary, 923 F.2d at 1065.

1. Pennsylvania's "One Satisfaction" Rule

Under Pennsylvania law:

> A plaintiff who is injured at the hands of more than one tort-feasor may sue and recover a judgment against any one or all of the tort-feasors and may attempt to collect the damages awarded by the judgment against any one or all of them. However, although a plaintiff may obtain a judgment against several tort-feasors for the same harm, he or she is entitled to only one satisfaction for that harm.

6

Brandt v. Eagle, 602 A.2d 1364, 1367 (Pa. Super. Ct. 1992) (en banc) (citing Thompson v. Fox, 192 A. 107 (Pa. 1937)); see Franklin Decorators, Inc. v. Kalson, 479 A.2d 3 (Pa. Super. Ct. 1984). "[T]he `one satisfaction' rule bars a subsequent suit against another tortfeasor only where the prior proceedings can reasonably be construed to have resulted in a full satisfaction of the plaintiff's claim." Frank v. Volkswagenwerk, A.G. of W. Germany, 522 F.2d 321, 324–26 (3d Cir. 1975). Full satisfaction may arise from a settlement with less than all tortfeasors. See id. at 326. Determining whether a plaintiff has been fully satisfied through a settlement, however, involves a highly factually sensitive analysis of "the circumstances of the prior settlement to see whether the satisfaction . . . `represent[ed] the true value of the claim.' " Frank, 522 F.2d at 326 (quoting Blanchard v. Wilt, 188 A.2d 722 (Pa. 1963)). The party asserting "one satisfaction," therefore, has the burden to provide the court with record evidence of the circumstances surrounding the settlement. The record in this case, however, contains virtually no evidence relating to Greenleaf 's state settlement. Because appellants have failed to carry their burden, we cannot conclude that Greenleaf 's federal action was barred by Pennsylvania's one satisfaction rule.3

_____

3. Appellants rely almost exclusively upon Brandt v. Eagle, 602 A.2d 1364, to support their "one satisfaction" claim. Brandt belongs to a line of Pennsylvania cases standing for the proposition that where a plaintiff obtains a judgment and the "judgment is marked satisfied . . . [Pennsylvania] law presumes that full satisfaction for the harm incurred has been received." Id. at 1367; see Hilbert v. Roth, 149 A.2d 648 (Pa. 1959) ("[W]hen the plaintiff has [a judgment] marked satisfied of record, the common law assumption that he is satisfied may reasonably be permitted to operate."); Frank, 522 F.2d at 326. Courts have construed this conclusive presumption narrowly applying it only to cases where there has been a "judgment entered as satisfied" on the docket. See Blanchard, 188 A.2d at 725 (noting that Hilbert "must be limited to its own factual situation"). As the District Court correctly noted, however, "this is not a case where a judgment was adjudicated let alone satisfied." Accordingly, we find appellants' reliance upon this line of cases misplaced.

7

2. Issue Preclusion

Under Pennsylvania law, issue preclusion applies where:

> (1) the issue decided in the prior adjudication wa s identical with the one presented in the later action;
>
> (2) there was a final judgment on the merits;
>
> (3) the party against whom the plea is asserted wa s a party or in privity with a party to the prior adjudication; and
>
> (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Dici v. Commonwealth of Pa., 91 F.3d 542, 548 (3d Cir. 1996)(citing Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996), and Safeguard Mut. Ins. Co. v. Williams, 345 A.2d 664, 668 (Pa. 1975)). The parties agree that this is the correct standard and that factors one, three, and four are present in this case. They disagree, however, regarding the second factor: whether the state jury's damages verdict is a "final judgment."

The Pennsylvania Supreme Court consults section 13 of the Restatement (Second) of Judgments to define "final judgments" for purposes of issue preclusion. See Shaffer, 673 A.2d at 875. Section 13 provides:

> The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded preclusive effect.

Restatement (Second) of Judgments S 13 (1982). The comments to section 13 emphasize that issue preclusion is applicable when it is determined "that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming the basis for a judgment already entered." Id. S 13 cmt. g.

> [To require that] a final judgment in the strict sense has been reached in the first action can involve

8

> hardship--either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a completefinish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment.

Id. Accordingly, the Restatement recognizes that the finality inquiry focuses upon "whether the conclusion in question is procedurally definite." Id. Section 13's comments provide a number of factors to be considered in this regard:

> (1) whether the prior decision was "adequately deliberated and firm" and not "avowedly tentative";
>
> (2) whether the parties were fully heard;
>
> (3) whether the court supported its decision with a reasoned opinion;
>
> (4) whether the court's prior decision was subject to appeal or was in fact reviewed on appeal.

Id. One of section 13's illustrations provides an example particularly instructive in this appeal:

> In a jurisdiction that permits "split" trials (a trial of liability followed, if liability is found, by a separate trial to ascertain the damages), the jury in a negligence case finds for the plaintiff A as to liability, the defendant B having denied his own negligence and pleaded contributory negligence on the part of A. Under the law of the jurisdiction, B cannot appeal at this point as there is no judgment that qualifies as final for that purpose; an appealable judgment would be reached later, when, in the second phase of the trial, another jury assessed the damages. But prior to the second phase, the jury's verdict as to liability may be held conclusive as to the issues of A's and B's negligence in any other action between them in which the same issues appear.

Id. S 13 cmt. g, illus. 3 (emphasis added).

9

We conclude that Greenleaf's prior state court jury verdict on damages is a "final judgment" under section 13 and carries issue preclusive effect upon that issue in this action. As the above-quoted illustration indicates, 4 weighing the factors set forth in section 13's comments favors a finding of sufficient finality in circumstances like those before us. The parties were "fully heard" on the issue of damages and the jury's verdict was "adequately deliberated and firm." The jury's decision would have been appealable following Phase II, had no settlement occurred. Pursuant to the settlement, the Greenleafs voluntarily surrendered their right to further review, and the dismissal order entered pursuant to that settlement assured that the assessment of damages was "procedurally definite" and not subject to change. Under these circumstances, we perceive no justification for permitting the Greenleafs to relitigate the amount of their damages.5

The District Court concluded that the state jury's damages verdict did not preclude relitigation of the damages issue in federal court for two reasons. We find both unpersuasive. First, the District Court cited our decision in Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1996), for the proposition that settlement following a reverse bifurcation verdict on damages is not an adjudication. Dici does not stand for that proposition,

_____

4. Greenleaf attempts to distinguish this illustration by arguing that it, like the comments to section 13 generally, deals with a "same party" situation and neither Owens nor Garlock were parties to the state proceedings. While it is true that the comments and illustrations deal predominantly with "same party" situations, issue preclusion in Pennsylvania does not require identity of parties. Phillip v. Clark, 560 A.2d 777, 780 (Pa. Super. Ct. 1989) (" `There is no requirement that there be an identity of parties in the two actions in order to invoke [issue
preclusion].' " (quoting Mellon Bank v. Rafsky, 535 A.2d 1090, 1093 (Pa. Super. Ct. 1987))); cf. Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1232 (3d Cir. 1995).

5. We observe that our conclusion is consistent with the modern trend to "relax[ ] traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." Wright et al., Federal Practice and Procedure S 4434 at 321 (1981 & 1998 Supp.).

however. In Dici this court considered whether the factual findings of a state workmen's compensation referee had preclusive effect in a subsequent federal court action for violations of Title VII and state antidiscrimination statutes. Id. at 545-47. The case involved neither a reverse bifurcated proceeding, nor a jury verdict, nor a settlement. Id. Instead, we determined that issue preclusion did not apply because the issues presented in the two proceedings were not the same. Id. at 549-50.

The District Court's second reason for refusing to apply issue preclusion was the preliminary verdict's lack of immediate appealability. While noting that appealability is only a factor for determining the appropriateness of issue preclusion, the Court relied upon section 28(1) of the Restatement (Second) of Judgments for the proposition that issue preclusion did not apply because Greenleaf "could not, as a matter of law, have obtained review of the preliminary verdict." We find the District Court's reliance upon the preliminary verdict's appealability misplaced.

Section 28 establishes various exceptions to the doctrine of issue preclusion. It provides in relevant part:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances.
>
> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action.

Restatement (Second) of Judgments S 28 (1982). According to the comments, review is "unavailable as a matter of law" where "the controversy has become moot, or because the law does not allow review of the particular category of judgments." Id. S 28 cmt. a. The comments further provide that the exception does not apply where "review is available but not sought." Id.

While the Pennsylvania Supreme Court has adopted section 28, Clark v. Troutman, 502 A.2d 137 (Pa. 1985), it has not specifically addressed the scope of the section 28(1)

11

exception. This court, however, has addressed similar issues regarding the significance of appealability for purposes of issue preclusion under the Restatement. Our decisions hold that decisions not final for purposes of appealability may nevertheless be sufficientlyfinal to have issue preclusive effect. For example, in In re Brown, 951 F.2d 564, 569–70 (3d Cir. 1991), we concluded that a state court's partial summary judgment establishing a debtor's liability in a mortgage foreclosure action was sufficiently final to have issue preclusive effect in a subsequent bankruptcy proceeding, even though the judgment was not final for purposes of appealability because the amount due on the mortgage remained to be determined in state court. We explained:

> Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable. . . . `Finality for purposes of issue preclusion is a more `pliant' concept than it would be in other contexts.' Finality `may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'

Id. at 569 (quoting Dyndul v. Dyndul, 620 F.2d 409, 412 & n.8 (3d Cir. 1980)). We determined that issue preclusion was justified observing that (i) the party against whom issue preclusion was asserted was represented by counsel in the prior state action, (ii) hearings were held in state court, (iii) the trial court's summary judgment order was not "tentative," and (iv) allowing relitigation in bankruptcy court would waste judicial resources. Id. at 570.

Similarly, in Burlington Northern R.R. v. Hyundai Merchant Marine Co., 63 F.3d 1227, 1233 n.8 (3d Cir. 1995), we found a denial of summary judgment sufficiently final to justify issue preclusion in a subsequent action even though it was not immediately appealable as a matter of law. We noted that (i) the party was represented by counsel in the prior action, (ii) the issues were genuinely contested, and (iii) the lower court's denial of summary judgment was not "tentative." See id. These elements are also satisfied in this case. In the prior state action (i) Greenleaf was

12

represented by counsel, (ii) the issue of damages was genuinely contested in a jury trial, (iii) the verdict was not tentative, and (iv) allowing damages to be relitigated in federal court clearly wasted judicial resources.

We do not attempt to fully chart section 28(1)'s scope in this case. We simply hold that reading section 13 and section 28(1) together, we find that the lack of immediate appealability of Greenleaf's preliminary state damages verdict does not operate to prevent its issue preclusive effect in this case. Appellate review would have been available had the Greenleafs not chosen to settle. 6 Allowing Greenleaf to relitigate damages in federal court was unnecessarily duplicative and a waste of valuable judicial resources -- the precise evils that issue preclusion is designed to combat. See Shaffer, 673 A.2d at 875 ("[Issue preclusion] relieve[s] parties of the cost and vexation of

_____

6. While we find it unnecessary to define section 28(1)'s scope to resolve this case, we observe that courts typically apply it to the narrow set of judgments where a party has no right to appeal at any time because such appeals are wholly unavailable "as a matter of law." See Wright et al., Federal Practice and Procedure S 4433 at 315 (1981 & 1998 Supp.)("[Courts must distinguish] between decisions that could not ever be appealed and decisions that will become eligible for appeal in the future. Relaxation of the traditional views of finality has created the opportunity to rest preclusion on a decision that cannot be appealed at present but may be appealed and reversed in the future."). For example, some courts have applied section 28(1) to "[a] District Court's jurisdictional findings incident to remand" because remand orders are wholly unappealable as a matter of law under 28 U.S.C. S 1447(d). See, e.g., Nutter v. Monongahela Power Co., 4 F.3d 319, 322 (4th Cir. 1993); Southern Leasing Corp. v. Tufts, 804 P.2d 1321, 1323 (Ariz. Ct. App. 1991). Similarly, other courts have applied section 28(1) to allow a party who generally prevailed in a prior judgment, but lost on certain issues, to relitigate the issues upon which they were unsuccessful because the party was " `not aggrieved and could not appeal the judgment [as a matter of law].' " See, e.g., Lombardi v. City of El Cajon, 117 F.3d 1117, 1122 (9th Cir. 1997) (quoting Anderson-Cottonwood Disposal Serv. v. W.C.A.B., 135 Cal.App.3d 326, 332, 185 Cal.Rptr. 336, 340 (1982)); In re DES Litig., 7 F.3d 20, 24 (2d Cir. 1993) see also Hernandez v. Region Nine Housing Corp., 684 A.2d 1385, 1393 (N.J. 1996)(section 28(1) prevented issue preclusion of EEOC's adverse decision on Title VII claim because no appellate review of EEOC decision exists). The Greenleafs' preliminary verdict does not fall into this category of cases.

multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions encourage[s] reliance on adjudication.").

B. Adequacy of the Jury Instructions

Appellants assert that the District Court's jury instructions inadequately informed the jurors regarding Pennsylvania law on asbestos related injuries. Our standard of review over this issue is mixed. We exercise plenary review to determine whether the District Court's jury instructions misstated Pennsylvania law. See Woodson v. Scott Paper Co., 109 F.3d 913, 929 (3d Cir. 1997). In the absence of a misstatement, however, we review the District Court's decisions regarding jury instructions for abuse of discretion. See Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 191 (3d Cir. 1990) ("Unless a trial judge misstates the law, the judge's rulings on points for charge may be reversed only if the judge committed an abuse of discretion.").

Appellants raise two arguments to persuade us that the District Court's instruction misstated Pennsylvania law. First, they both claim that the court failed to specifically instruct the jury regarding the Eckenrod "frequency, regularity and proximity" test, which they claim is the exclusive rule in asbestos cases under Pennsylvania law. Second, Garlock contends that the court erred in not submitting its proposed "de minimis" exposure defense to the jury.

The District Court's instruction in this case charged the jury:

> . . . [F]ocus on the asbestos products manufactured and distributed by each particular defendant. . . .[If] the product in [sic] particular of a defendant was defective in the sense that it lacked an adequate warning, the defendant is liable if that condition is the legal cause of the harm, that is if it is a substantial factor in bringing about the harm to Charles Greenleaf. . . . A substantial factor is a real actual factor even though the result may be unusual, unforseen, unforeseeable or unexpected but it is not an imaginary

14

> or fanciful factor having no connection or only an
> insignificant connection with the injury. There may be
> more than one substantial factor in bringing about the
> harm suffered by the plaintiff. . . . What this means in
> this case is that for a defendant to be liable, plaintiffs
> must show by a fair preponderance of the evidence that
> Charles Greenleaf was exposed to that defendant's
> product and that such exposure was a substantial
> factor in bringing about his injuries.

(JA 434-443) (emphasis added).

The District Court's charge thus told the jury that the plaintiffs had the burden of proving proximate cause and explained that concept to them. It further cautioned that the jury must conduct a separate analysis of the evidence, and make a separate decision on, the proximate cause issue with respect to each defendant. The District Court's charge on these points is entirely consistent with our understanding of the Pennsylvania case law in asbestos cases.

We do not understand the appellants to contend that anything said by the District Court is inconsistent with Pennsylvania law. Rather, they contend that the Superior Court in Eckenrod v. GAF Corp., 544 A.2d 50, 53 (Pa. Super. Ct. 1988), held that any charge in an asbestos case is deficient if it fails specifically to require evidence of "the frequency of the use of the product and the regularity of plaintiff's employment is proximity thereto."

In Eckenrod, the Pennsylvania Superior Court affirmed a grant of summary judgment in favor of various asbestos manufacturers because the plaintiff had failed to provide sufficient evidence of the decedent's exposure to the defendants' products. The Court summarized the principles governing liability in an asbestos action:

> In order for liability to attach in a products liability
> action, the plaintiff must establish that the injuries
> were caused by a product of the particular
> manufacturer or supplier. Additionally, in order for a
> plaintiff to defeat a motion for summary judgment a
> plaintiff must present evidence to show that he inhaled
> asbestos fibers shed by the specific manufacturer's

15

product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the products use. Summary judgment is proper when the plaintiff has failed to establish that the defendant's products were the cause of plaintiff's injury.

* * *

We acknowledge that the facts establish that the decedent on occasion was exposed to asbestos; there is no evidence, however, as to the regularity or nature of decedent's contact with asbestos. Moreover, there is no testimony establishing that Mr. Eckenrod worked with asbestos supplied and/or manufactured by Porter or A-Best or any of the other appellees. The mere fact that appellees' asbestos products came into the facility does not show that the decedent ever breathed these specific asbestos products or that he worked where these asbestos products were delivered.

Id. at 53.

We do not read Eckenrod as establishing any additional or special requirements for jury instructions in asbestos cases. Rather, we read it as a straightforward application of traditional principles of summary judgment and proximate cause law to a factual pattern, various permutations of which arise frequently in asbestos cases.

Accordingly, it is not surprising to us to find post-Eckenrod opinions in which the Superior Court has sustained jury verdicts where the court's discussions did not contain the "frequency, regularity and proximity" test appellants urge as essential.7See, e.g., Juliano v. Johns-

_____

7. We find further support for our conclusion in Jobe v. W.P. Metz Refining, 664 A.2d 1015 (Pa. Super. Ct. 1995), where the Superior Court extended the Eckenrod principles of asbestos liability to product liability cases involving cadmium, another carcinogenic substance. The court discerned from the "Eckonrod line of cases" that an asbestos plaintiff must prove three elements: (i) that the employee/decedent was at a particular work site, (ii) that the employee/decedent was exposed to carcinogenic-containing products at that site, and (iii) that a defendant's carcinogenic-containing products was [sic] at the that particular work site at or about the same time as the employee/decedent. Id. at 1019. Notably absent from the court's summary of asbestos liability law was the Eckenrod "frequency, regularity and proximity" formula.

Manville Corp., 611 A.2d 238, 239 (Pa. Super. Ct. 1992); Ottavio v. Fireboard Corp., 617 A.2d 1296, 1298 (Pa. Super. Ct. 1992); Lilley v. Johns-Manville Corp., 596 A.2d 203, 209 (Pa. Super. Ct. 1991). We find Lilley v. Johns-Manville Corp., 596 A.2d 203, particularly instructive because it involved facts strikingly similar to this appeal. There, as here, the Superior Court, considered a challenge to the adequacy of jury instructions in an appeal from a judgment in favor of an asbestosis plaintiff. The trial court instructed the jury that the plaintiff must prove that the defendant's product was a "substantial factor in bringing about the harm" and that:

> plaintiff must present evidence which establishes that he inhaled asbestos fibers which came from the manufacture's [sic] product. It is not enough simply to show that the product was delivered to the work place. He must show that he actually worked in the vicinity of the product and that he inhaled asbestos fibers from that product . . . Remember there may be several substantial factors. There are no requirements [sic] there be a single substantial factor. As long as youfind that there is a real factor that's not something fanciful or something imaginary, but something that came about because of what happened.

Id. The Superior Court concluded that this"jury charge adequately comports with the mandate of Eckenrod and that the trial court was not required to provide any more precise explanation than that actually given." Id. at 210. While relying heavily upon Eckenrod the court did not invoke a "frequency, regularity and proximity" test. See id. at 209.

In the absence of a misstatement, we review the District Court's jury instructions for abuse of discretion. We find no abuse of discretion in the District Court's refusal to include appellants' proposed "frequency, regularity, and proximity" instructions.8
_____

8. We find no merit in appellants' claim that the District Court's Phase II verdict form was patently insufficient and oversimplified. Appellants submitted proposed verdict forms to the court, each posing three distinct

17

We similarly find Garlock's assertion that the District Court misstated Pennsylvania law by omitting Garlock's proposed "de minimis" exposure defense from the jury instruction unpersuasive. Again, we take guidance from Lilley where the Superior Court rejected a virtually identical argument stating that it was "unaware of any requirement of Pennsylvania law that the jury charge must include an instruction on de minimis exposure." Id. at 210. We have similarly found no such requirement, and conclude that the District Court did not err by refusing this instruction.

C. Attorney Misconduct

Appellants next contend that a new trial is required because allegedly inflammatory statements made by Greenleaf 's counsel in closing arguments prejudiced the jury. We review District Court decisions whether to grant a new trial because of alleged attorney misconduct for abuse of discretion. Blanche Road Corp. v. Bensalem Township, 57 F.3d 253, 264 (3d Cir. 1995); Fineman v. Armstrong World Indus. Inc., 980 F.2d 171, 207 (3d Cir. 1992). This is because we recognize that " `[i]n matters of trial procedure . . . the trial judge is entrusted with wide discretion because he [or she] is in a far better position than we to appraise the effect of the improper argument of counsel.' " Fineman, 980 F.2d at 207 (quoting Reed v. Philadelphia Bethlehem & New England R.R. Co., 939 F.2d 128, 133 (3d Cir. 1991)). A new trial may be granted only where the improper statements "made it `reasonably probable' that the verdict was influenced by prejudicial statements." Id. (citing Draper v. Airco Inc., 580 F.2d 91, 94 (3d Cir. 1978)).

Appellants point to three alleged incidents of misconduct. First, they argue that Greenleaf 's counsel suggested that

_____

questions. The District Court, however, fashioned its own form, which presented one question: "Are the following defendants liable?" A list of the defendants followed the question. As we have concluded above, the court's jury instructions adequately covered the substantive law's requirements regarding liability. They were relatively straightforward and it was not an abuse of discretion for the District Court to refuse to repeat them in the verdict form.

18

Greenleaf would not recover anything unless the jury returned a verdict against the defendants. This was allegedly improper and prejudicial because Greenleaf had already received compensation for their injuries in the state settlement. Second, Garlock contends that counsel distracted the jury's attention from the relevant issues by irrelevant commentary on the failure of the absent defendants to defend. Finally, appellants complain that Greenleaf's counsel suggested to the jury that a verdict for plaintiffs would "send a message to the folks at Owens."[9]

These comments do not approach the level of attorney misconduct found to prejudice the jury in our precedents. See, e.g., Blanche Road, 57 F.3d at 264; Fineman, 980 F.2d at 207–10; Draper, 580 F.2d at 95. We conclude that it is not reasonably probable that the verdict was prejudicially influenced by Greenleaf 's counsel's remarks, and we find no abuse of discretion in the District Court's denial of appellants' requests for a new trial on this ground.

D. Denial of Motions For a New Trial

Finally, appellants contend that the District Court erred when it denied their motions for a new trial. They present two arguments. First, Garlock presents a classic insufficiency of the evidence argument claiming that the evidence does not support a finding that it is liable for

_____

9. Owens Corning cites Foster v. Crawford Shipping Co., Ltd., 496 F.2d 788, 792 (3d Cir. 1974), for the proposition that inviting the jury to "send a message" is by itself outrageous enough to warrant a new trial, particularly in a strict liability case where conduct is not at issue. We find Foster unhelpful. Foster did not erect a per se rule against invitations to a jury to "send a message", nor did it involve products liability. In Foster, we granted a new trial because the jury had been prejudiced by counsel's improper remarks regarding (i) the disparity of wealth between parties (ii) the defendant's foreign ownership, and (iii) the plaintiff 's potential burden upon the community if the defendant was not found liable. See id. at 792. We have relied upon Foster to hold that it is improperly prejudicial for counsel to appeal to financial disparity between parties before the jury. See Draper, 580 F.2d at 95. Greenleaf 's counsel did not emphasize the parties' financial disparity and none of the remaining Foster factors are present in this case. Accordingly, we find Owens Corning's argument unavailing.

Greenleaf 's injuries. Second, both appellants claim that the verdict absolving the non-appearing defendants is against the overwhelming weight of the evidence. The Greenleafs respond that appellants are precluded from asserting these claims under our holding in Yohannon v. Keene Corp., 924 F.2d 1255, 1262 (3d Cir. 1991).

## 1. The Verdict Against Garlock

We cannot reach the merits of Garlock's first claim because it did not move for judgment as a matter of law under Rule 50 before the jury retired to deliberate. It is well settled that a party who does not file a Rule 50 motion for judgment as a matter of law at the end of the evidence is not thereafter entitled to have judgment entered in its favor notwithstanding an adverse verdict on the ground that there is insufficient evidence to support the verdict. See Lowenstein v. Pepsi-Cola Bottling Co., 536 F.2d 9, 11 (3d Cir. 1976). However, "the failure to move for a directed verdict at the close of all evidence does more than limit an aggrieved party's remedy to a new trial. In this Circuit, it wholly waives the right to mount any post-trial attack on the sufficiency of the evidence." Yohannon, 924 F.2d at 1262; see also Stadtlander Drug Co., Inc. v. Brock Control Sys. Inc., 174 F.R.D. 637, 641 (W.D. Pa. 1997)(refusing to consider Rule 59 motions for a new trial based upon insufficiency of the evidence where the movant did not move for judgment as a matter of law before the jury retired to deliberate). The record does not indicate that Garlock moved for judgment as a matter of law; its failure to do so operates as a waiver with fatal consequences to its insufficiency of the evidence claim in this appeal.[10]

## 2. The Verdict in Favor of the Non-Appearing Defendants

Appellants also claim that the jury's verdict is against the clear weight of the evidence to the extent it absolved the non-appearing defendants of liability. They ask for a new

_____

10. Garlock claims that its proposed jury instruction number one was a request for judgment as a matter of law. The instruction cannot be so construed.

20

trial at which they will once again seek a judgment in their favor on their cross-claims against the non-appearing defendants. We disagree with Greenleaf 's suggestion that Yohannon precludes our consideration of this claim.

A court may order a new trial upon the motion of a party or sua sponte where there is insufficient evidence to support the verdict or where the verdict was against the weight of the evidence. Fed. R. Civ. P. 59(a)-(d); Wright & Miller, Federal Practice & Procedure S 2806 (1995). Yohannon circumscribes a court's authority to act upon such a motion when a party is arguing that the evidence is insufficient to support a verdict against it, and it is, accordingly, entitled to judgment in its favor as a matter of law. Assuming that there is no substantial evidence to support the verdict, such an argument can be as successfully argued at the close of all the evidence, and Yohannon takes the position that a failure to advance it at that time waives the right to a new trial based on insufficiency of the evidence.

The appellants here are not arguing insufficiency of the evidence, however. They acknowledge, as they must, that they had the burden of proof on their cross-claims, and they do not take the extreme position that the state of the record entitles them to judgment, i.e., that evidence the jury was not at liberty to reject dictated a judgment in their favor.11 Rather, they take the position that the court, utilizing its authority under Rule 59(a), should critically evaluate the evidence and exercise its discretion in favor of a new trial because the probative evidence in their favor as contrasted with that opposed is overwhelming. This is not a position that can be taken in support of a Rule 50 motion for judgment as a matter of law. Wright & Miller, S 2524, at 255-56 (indicating that a court in response to a Rule 50 motion may not consider the credibility of the witness or

_____

11. A litigant with the burden of persuasion is entitled to judgment as a matter of law at the close of the evidence only in the very rare case where a decision in its favor is mandated by evidence the trier of fact is not at liberty to disbelieve and no inference contrary to its position can be drawn from the undisputable facts. Wright & Miller, S 2535, at 328-29.

21

the weight of the evidence and must draw all inferences in favor of the party against whom the motion is made).

We conclude that Yohannon was not intended to foreclose the grant of a new trial to parties in appellants' position. Given the state of the record at the close of the evidence they had every reason to expect that the jury, if it understood and rationally applied the court's instructions, would decide that they had carried their burden of persuasion. Moreover, they were not in a position to argue that evidence which the jury was not entitled to reject required it to infer that the exposure to each of the products of the non-appearing defendants was a substantial factor in causing Greenleaf's mesothelioma. Under these circumstances appellees did not waive their rights under Rule 59 by failing to move under Rule 50 for judgment as a matter of law.

We now turn to the merits of appellants' claim. We review a District Court's decision whether to grant a new trial on the basis that the verdict is against the weight of the evidence for abuse of discretion. Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988). Deferential review is appropriate when considering whether a verdict is against the weight of the evidence "because the district court was able to observe the witnesses and follow the trial in a way that we cannot replicate by reviewing a cold record." Id. "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." Williamson v. Consolidated Rail Corp., 926 F.2d 1344, 1353 (3d Cir. 1991).

With this deferential standard in mind we consider the record. Five co-defendants, Johns-Manville, Owens-Illinois, Uniroyal, Fireboard, and Hopeman Brothers, did not appear at trial to defend against Greenleaf's claims and appellants' counterclaims. The following uncontested evidence was presented against them at trial. In his video taped deposition Mr. Greenleaf described his occupational exposure to asbestos products. He worked as a shipfitter at Sun Ship for seven and one half years beginning in 1942. He did not personally handle asbestos materials, but he

22

worked in ship hulls where asbestos dust "sift[ed] down all the time" from asbestos containing pipe covering, mud, cloth and paneling being used above him. He estimated that he was exposed to asbestos products 90% of his time at Sun Ship and specifically identified (i) Johns-Manville as a manufacturer of the products used there, and (ii) Hopeman Bros. as a contractor using asbestos there. Mr. Greenleaf also worked at New York Ship for eight months as a shipfitter and experienced similar exposure to the same products for four of those months. This evidence thus establishes that Greenleaf was exposed to Johns-Manville and Hopeman Bros. asbestos for almost eight years.

In 1953, Mr. Greenleaf began working at Westinghouse as a fabricator. He worked there, mainly building turbines, for more than 30 years until he retired in 1986. Greenleaf testified that, during his time at Westinghouse, he was exposed to asbestos containing rope, cloth, block, gaskets, and pipe covering, and personally worked with rope and gaskets. When asked what he meant by "exposed" Mr. Greenleaf explained:

> Exposed to it because it was the same thing. They might be working over top of you or right there next to you and like I say with the air--there was no air conditioning or nothing. If you need any air, you opened an air hose someplace [sic] to give you some air, which didn't help this situation.

(JA 478). He estimated that he was exposed to cloth one third of his time, and block and pipe covering one quarter of his time each. He described how asbestos dust from block cutting permeated the air, stating that "everything you went to get against, got against your clothes because nobody went around cleaning these things up, you know. It was all--it was on everything." (JA 481). Mr. Greenleaf also noted that when the asbestos dust mixture was combined with water to create asbestos mud "[the dust] went right up to the air." (JA 482). When asked which manufacturers' asbestos products were used at Westinghouse he identified, among others, Johns-Manville and Owens-Illinois. Additionally, in another deposition Greenleaf was asked whether he was exposed to one manufacturer's product

23

more than another's during his tenure at Westinghouse. He responded:

> A: I would say Johns-Manville might have been the most popular, you know, the most used.
>
> Q: Can you give us a percentage versus the other ones?
>
> A: I would say offhand maybe 50% would be that company.

(JA 372-73). Finally, Mr. Greenleaf stated that he never observed a warning on any of the asbestos products he saw at Sun Ship and Westinghouse.

James Cyrus, a coworker who spent 80% of his time over almost 30 years working with Greenleaf at Westinghouse, provided additional evidence regarding Greenleaf's exposure. He testified that he and Mr. Greenleaf frequently used asbestos cloth manufactured by, among others, Johns-Manville, Uniroyal, and Fireboard, and that the cloth disintegrated from the heat and emitted asbestos dust. He also testified that Mr. Greenleaf worked with Uniroyal gaskets. Thus, Cyrus's and Greenleaf's testimony established that Greenleaf had been exposed to Uniroyal, Fireboard and Owens-Illinois products for 30 years, and added an additional 30 years to his prior exposure to Johns-Manville products.

In addition to this, the non-appearing defendants' interrogatory answers were read to the jury. In them, the non-appearing defendants admitted to selling or using asbestos products. Finally, Greenleaf's expert witness testified, with a reasonable degree of medical certainty, that Greenleaf's exposure to asbestos in the workplace from 1942 to 1976 was "the kind of exposure that would have led to the development of mesothelioma." (JA 237).

The District Court instructed the jury that it mustfind essentially three elements to hold a defendant liable for Greenleaf's injuries. The jury had to determine that (i) a defendant's asbestos product was defective because it lacked a warning, (ii) Greenleaf was exposed to that defendant's product, and (iii) exposure to the product was a substantial factor in causing Greenleaf's mesothelioma.

24

The uncontested evidence satisfied each element with respect to each of the non-appearing defendants. First, the non-appearing defendants admitted to producing or using asbestos products in their interrogatory answers, and Greenleaf's uncontested testimony established that he had never seen a warning on any of the defendants' products. Second, Greenleaf and Cyrus provided undisputed testimony that he was exposed to each defendant's asbestos products: (i) Johns-Manville for approximately 38 years, (ii) Fireboard, Uniroyal and Owens-Illinois for 30 years, and (iii) Hopeman Bros. for approximately 8 years. Finally, Greenleaf's expert testified that Greenleaf's exposure to these products was the kind of exposure that caused mesothelioma.

While the jury was not required to credit all of this uncontroverted evidence, and while it was not required to draw the causation inference for which Greenleaf contended, the record must be evaluated in light of the fact that the jury found for the plaintiff against Garlock and Owens. The jury found Garlock and Owens liable on the basis of virtually identical evidence and in the face of a rigorous defense. Particularly puzzling is the jury's finding that Johns-Manville was not liable when the evidence established that Greenleaf's exposure to Manville products far exceeded his exposure to either Garlock or Owens products.

Given the evidence that the jury must have credited in returning the verdicts against Garlock and Owens, we can find no rational explanation for the jury's failure to find the non-appearing defendants liable as well. It may well be that the jury was reluctant to judge them liable without hearing their side of the story. But whatever may have been the reason for the verdicts in favor of the non-appearing defendants, we are left with the definite andfirm conviction that a mistake has been made and that a new trial on the cross-claims is necessary to prevent a miscarriage of justice.

III. Conclusion

We will reverse the judgment of the District Court and

remand for further proceedings consistent with this opinion. On remand, the District Court will enter a judgment in the Greenleafs' favor against Garlock and Owens in an amount consistent with the amount of damages awarded them in state court.12  It will conduct a new trial on the crossclaims of Garlock and Owens against the non-appearing defendants.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

12. We note that the District Court's September 2, 1997 order granted Greenleaf 's request for delay damages under Pennsylvania law. The District Court's award of $135,433.22 in delay damages was calculated based upon the federal jury's damages assessment. Because we conclude that issue preclusion prevented relitigation of damages, the District Court will have to recalculate delay damages on remand.