**Vinciguerra v. Crane Co.**

*Benjamin P. Shein,* for plaintiff.

*G. Daniel Bruch, Jr.,* for defendant Crane Co.

BERNSTEIN, *J.,* November 21, 2013—Two asbestos cases were tried together beginning on January 30, 2013. On February 25, 2013, the jury returned a verdict in favor of plaintiff Charlotte Vinciguerra and against defendants Crane, Co. ("Crane") and four other tortfeasors in the amount of $2,300,000.00.[1] Defendant Crane filed motions for post-verdict relief on March 7, 2013. On May 3, 2013, plaintiff filed an answer to Crane's post-verdict motions. On July 30, 2013, this court entered an order denying Crane's motions for post verdict relief. Crane timely appeals this decision.

## I. Plaintiff's Case for Causation did not Fail as a Matter of Law.

Defense claims that they are entitled to a new trial

---

1. Plaintiffs resolved their claims with the other eight tortfeasors before or during trial.

because this court permitted plaintiff's expert witness to testify that "each and every breath" and "every exposure" to asbestos-containing fiber was causative of plaintiff's decedent's disease, in violation of the Pennsylvania Supreme Court decision in *Betz v. Pneumo Abex, LLC*.[2]

None of plaintiff's experts offered this opinion. Dr. Steven Markowitz, an occupational and environmental medicine expert, testified that in his opinion the occupational exposure to asbestos as experienced by plaintiff's decedent caused his disease. Dr. Markowitz explained the dose-response relationship and concepts of cumulative exposure. He also testified to the various types of asbestos and their effects in the body. Dr. Markowitz' testimony was based upon his individual analysis of the specific factors in plaintiff's decedent's condition, was offered to a reasonable degree of medical certainty, and was fully subject to cross-examination. His reasoning was fully explained. On cross-examination defense counsel themselves asked:

Q. "Well, let's take the first one, every breath of asbestos containing air, do you believe that every breath have asbestos containing air increases the risk of developing mesothelima?"[3]

The defense may not appeal on the basis of truthful expert opinion that they solicited.[4] Even with that question, which invited precisely the opinion that the defense sought to preclude, the witness said:

A. "Well, you know, you get into what frankly is kind

---

2. 44 A.3d 27 (Pa. 2012).
3. N.T., February 11, 2013 p.m., page 13, line 6 through 9.
4. *Commonwealth v. Yarris*, 549 A.2d 513, 525 (Pa. 1988) ("A party may not object to testimony which he himself elicits.")

of a logical problem because a worker works with asbestos for 20 years and took millions of breaths during that 20 years, they were exposed to asbestos during those 20 years, we know that 20 years produced their risk for mesothelioma, their 20 years consisted of consecutive breaths millions of times. So in theory, yes every breath contributes to exposure, to overall exposure which accumulates over time and gives them risk of the disease. And if they developed the disease then it gave them that disease.

Now, you take the individual breath, that's a very small low level exposure, but it's really the accumulation of all those breaths overtime that gives the risk."[5]

In that answer the witness did not opine that every breath causes mesothelioma. Rather the witness clearly explained that it is the cumulative effect which causes the disease.

Undeterred in seeking an inadmissible opinion and soliciting the same, counsel for the defense next asked:

Q. "You mentioned another concept, every product exposure, you believe that every exposure created by a product that contains asbestos in the work place increases the risk of asbestos related diseases?"[6]

Again, expert Markowitz did not offer any impermissible opinion. He said:

A. "...the product has to contain asbestos in more than a trivial amount, that the product has to be used and manipulated in a way that produced air borne dust, and that air borne dust has to be in the breathing zone of the

---

5. N.T., February 11, 2013 p.m., page 13, line 10 through 25.
6. N.T., February 11, 2013 p.m., page 14, line 4 through 8.

worker, that product has to be used with some frequency and duration to contribute to the overall exposure and thereby to disease."[7]

Indeed, he rejected the every breath theory as defense counsel persisted in seeking an impermissible opinion. He said:

Q. "If it were a very fleeting exposure, one consisting of, for instance minute over a 20 year career, then I wouldn't attribute that single trivial exposure to causation of a disease."[8]

The expert clearly provided the jury with sufficient information from which they could make the factual decision as to whether or not the exposure to asbestos in defendant's products caused plaintiff's decedent's disease.

Crane's own witness, Mr. Pantelleone, agreed that asbestos is a carcinogen and that any exposure over a very low threshold could qualify as a dangerous and hazardous exposure to asbestos: precisely the testimony adduced from plaintiff's expert on cross-examination.

## II. Crane is not Entitled to Judgment Notwithstanding the Verdict on the Grounds that Plaintiffs have made a Complete Recovery of their Damages.

Defendant claims that plaintiff may not recover more than the full amount awarded and surmises that plaintiff may do so in the future. Crane claims "plaintiffs have submitted claims in the past and likely will submit additional claims to various asbestos bankruptcy trusts."[9]

---

7. N.T., February 11, 2013 p.m., page 14, line 10 through 16.
8. N.T., February 11, 2013 p.m., page 14, line 20 through 23.
9. Brief in support of defendant Crane's motion for post-trial relief, p.10.

The speculation that plaintiff will unethically and improperly seek compensation beyond that awarded by the jury is unsupported by any evidence. Additionally, Crane is wrong when they claim that amounts received from settling defendants, whose liability was not presented to the jury because insufficient evidence was presented at trial for any liability to be found, must be included in the total compensation calculation.

Plaintiff is entitled to rely on the releases with settling joint tortfeasors which provided for *pro rata* as opposed to *pro tanto* reduction. Crane is entitled to a set-off based on the joint tortfeasor status of settling defendants only to the extent of the *pro rata* settlements contained in the release language plaintiff signed with the defendants. The court notes Crane had the ability throughout this action to join any other parties into the action or to pursue any cross-claims against parties initially in the action who have subsequently settled with plaintiff. "If the payer is not a tortfeasor, his payment would be that of a volunteer and would not support a claim for contribution."[10]

III. The Trial Court Properly Refused to Offer the Jury Instructions which are not the Law of Pennsylvania.

A trial court may not make rulings at trial on an assumption of what changes in the law the Supreme Court may make in the future. Defendant claims there was error in charging the jury in accordance with the law of Pennsylvania. Crane claims that because Federal Courts have predicted that the Pennsylvania Supreme Court will adopt section two of the restatement third of torts, this court should have used that prediction as its jury

10. *Slaughter v. Pennsylvania X-ray Corporation*, 638 F.2d 639 (3rd Circuit 1981, citing 42 Pa. C.S. §8322 and §83249(c)).

instruction, contrary to the clear law of Pennsylvania at the time of the trial. Crane claims that a new trial must be granted because this court failed to charge the jury in accordance with the law as it is predicted to be changed. It needs no citation of authority for this court to state as a black letter proposition of law that cases are to be tried, and all rulings made, in accordance with the law at the time trial occurred.[11]

## IV. The Trial Court Properly Excluded the Testimony of Dr. Charles Weaver.

Defendant claims there was error in precluding a "human memory and cognition expert" from testifying. Crane offered Dr. Weaver as an expert in cognition scientific theories. They offered this expert to "explain" why plaintiff's decedent's memory was mistaken. The Pennsylvania Supreme Court has clearly said repeatedly that credibility questions may not be the subject of expert opinion testimony.[12] This testimony is not a proper subject for expert testimony and preclusion was absolutely proper. It is the jury and the jury alone that decides credibility.[13] There is no distinction between the long-established

---

11. The Federal Court stands in a different position vis-a-vis appellate decisions in Pennsylvania in that It may predict the future. A trial court must follow the law.

12. *Commonwealth v. O'Searo*, 352 A.2d 30, 32 (1976); *Commonwealth v. Dunkel*, 602 A.2d 830 (Pa. 1992); *Commonwealth v. Balodis*, 747 A.2d 341, *cert. denied* 531 U.S. 817 (Pa. 2000); *Commonwealth v. Crawford*, 718 A.2d 768 (Pa. 1998); *Commonwealth v. Constant*, 925 A.2d 810, 822 (Pa. Super.), *app. denied* 932 A.2d 1285 (Pa. 2007).

13. *See Commonwealth v. O'Searo*, 352 A.2d 30 (Pa. 1976); *Commonwealth v. Dunkel*, 602 A.2d 830 (Pa. 1992); *Commonwealth v. Gallagher*, 547 A.2d 355 (Pa. 1988); *Commonwealth v. Davis*, 541 A.2d 315 (Pa. 1988); *Commonwealth v. Seese*, 517 A.2d 920 (Pa. 1986); *Commonwealth v. Balotis* 747 A.2d 341, *cert. denied* 531 U.S. 817 (Pa. 2000); *Commonwealth v. Crawford*, 718 A.2d 768 (Pa. 1988); *Commonwealth v. Robinson*, 5 A.3d 339 (Pa. Superior 2010); *Commonwealth v. Selenski*, 18 A.3d 1229 (Pa. Super. 2011); *Commonwealth v. Spense*, 627 A.2d 1176 (Pa. 1993).

criminal cases that preclude credibility expert testimony and proper rulings in civil cases.[14]

## V. The Trial Court Properly Permitted the Jury to Review an Exhibit During Deliberation.

Allowing the jury to review plaintiff's exhibit PA-24 during deliberation was not an abuse of discretion or error of any kind. The exhibit had been marked for identification. Defense expert, Donna Ringo, had been extensively examined about it. Specific passages were read to the defense witness and acknowledged by the witness to be accurate. Throughout this examination there was no objection raised. The exhibit was specifically referred to by plaintiff's counsel in closing. Its contents were repeatedly electronically displayed to the jury on a large screen without objection. Counsel's minor lapse in not formally moving the exhibit into evidence as part of plaintiff's list of exhibits does not make it reversible error to permit the jury to review material they had seen at length during the trial and had been extensively referred to in testimony.

## VI. The Consolidation of the *Amato* and *Vinciguerra* Cases was not "Unduly Prejudicial" to the Defense.

Defense claims that combining the *Amato* case with the *Vinciguerra* case was "unduly prejudicial." The long standing practice in Philadelphia County of consolidating multiple asbestos claimants into a common trial has been approved by the Pennsylvania Appellate Courts for decades.[15] The Philadelphia Court recently administratively

---

14. *Obici v. Third Nat. Bank & Trust Co. of Scranton*, 112 A.2d 94, 95 (Pa. 1955) ("Credibility of witnesses is always for the finders of fact.")(internal citations omitted)).

15. *Moore v. Ericsson, Inc.*, 7 A.3d 820, 828 (Pa. Super. 2010)(Asbestos cases often involve common questions of fact and consolidation

reviewed and revised these procedures and imposed significant restrictions on the number and types of cases that may be consolidated into trial groupings. There was no error in following standard practice and procedure in the Philadelphia Courts as modified to reduce the number of plaintiffs presented in one trial.

### VII. The Court Properly Excluded Evidence Offered without Proper Authentication.

Defense claims it is entitled to a new trial because this court did not allow them to introduce evidence that was purported to be purchasing records of asbestos-containing materials from DuPont Chambers Works Plant, plaintiff's decedent's place of work. Crane failed to establish a proper foundation for admission of this evidence, so it was properly excluded.

Under Pa.R.C.P. 901, proffered exhibits must be preliminarily authenticated before they can be admitted into evidence. The proponent must put forward sufficient proof that the evidence is what the proponent claims it to be.[16] The question of the sufficiency of this preliminary proof "is a question committed to the discretion of the trial judge."[17] Crane attempted to authenticate the purchasing records through an affidavit of a DuPont employee who did not work for the facility at the time the records were created. Defense put forth no evidence that this employee had any personal knowledge of the documents in question, including who prepared them or under what circumstances they were created. Plaintiff had no opportunity to question this employee about the contents of the affidavit. Defense counsel failed to properly authenticate these documents,

promotes judicial economy.).
16. Pa.R.C.P. 901(a).
17. *Adamczuk v. Holloway*, 13 A.2d 2, 4(Pa. 1940).

and therefore, the court properly excluded them.

## VIII. Crane is not Entitled to Remittitur for Damages Awarded to Plaintiff for Loss of Consortium.

Crane argues that it is entitled to remittitur and that the court should reduce the jury's verdict by $500,000.00, the amount the jury awarded Charlotte Vinciguerra for loss of consortium from the onset of Mr. Viniguerra's malignant mesothelioma to his death. At trial, Mrs. Vinciguerra brought three separate claims: a wrongful death claim on behalf of Mr. Vinciguerra's survivors, a survival claim on behalf of Mr. Vinciguerra's estate, and a consortium claim on her own behalf for the loss Mr. Vinciguerra's services and companionship from the time of the onset of his illness until his death.

Crane claims Mrs. Vinciguerra cannot recover separately for the wrongful death and loss of consortium claims. Crane argues that Mrs. Vinciguerra's recovery under the wrongful death act covers all damages for the pre-death loss of consortium claim. Crane's objection is based on a misunderstanding of the nature of these distinct claims. A claim under the wrongful death act compensates the decedent's beneficiaries for damages caused by the decedent's death.[18] These damages run from the decedent's date of death forward to the decedent's expected life span if the injury had not occurred.[19] In contrast, Mrs. Vinciguerra's claim for loss of consortium related to damages she sustained during the decedent's life. These damages are the loss of services and companionship due to Mr. Vinciguerra's illness while he was alive.

18. 42 Pa. Const. Stat. Ann. § 8301; *Sunderland v. R.A. Barlow Homebuilders*, 791 A.2d 384, 390 (Pa. Super. 2002) (citing *Hodge v. Loveland*, 690 A.2d 243, 245-46 (Pa. 1997)).
19. *See* 42 Pa. Const. Stat. Ann. §8301.

In *Novelli v. Johns-Manville Corporation*[20], the Pennsylvania Superior Court clearly stated that the law of Pennsylvania allows for a loss of consortium claim from the time of injury until the decedent's death. The question in that case was whether a widow's loss of consortium claim could extend beyond her late husband's death.[21] The court stated:

> In Pennsylvania, loss of consortium has been recognized as: "[A] right growing out of the marriage relationship which the husband and wife have respectively to the society, companionship and affection of each other in their life together. As thus defined and limited, any interference with this right of consortium by the negligent injury to one spouse, should afford the other spouse a legal cause of action to recover damages for that interference.[22]

The court further explained that most jurisdictions allow loss of consortium damages for the time between the spouse's injury and death.[23] This is also true under the restatement (second) of torts (1997) which states that:

> In the case of death resulting to the impaired spouse, the deprived spouse may recover under the rule stated in this Section only for harm to his or her interests and expenses incurred between injury and death. For any loss sustained as a result of the death of the impaired spouse, the other spouse must recover, if at all, under a

---

20. 576 A.2d 1085 (Pa. 1990).
21. *Id.*
22. *Id.* at 1087 (citing *Burns v. Pepsi-Cola Metro. Building Co.*, 510 A.2d 810 (Pa. Super. 1986)).
23. *Id.* (citing *Nenoff v. Thompson*, 480 F.2d 1221 (6th Cir. 1973); *Burke v. United States*, 605 F.Supp. 981 (D.Md. 1985); *Archie v. Hampton*, 287 A.2d 622 (N.H. 1972)).

wrongful death statute."[24]

The Superior Court specifically said there is "no persuasive reason for us to depart from the tradition limitation."[25] The traditional limitation, awarding damages for loss of consortium for the period of injury until the decedent's death is the law of Pennsylvania. Upon the injured party's death, the surviving spouse has no further right to recover for loss of services and companionship. All claims after death are compensable only under the wrongful death statute. There are two separate causes of action to compensate a surviving spouse for two separate injuries. In the instant case, the jury properly awarded Mrs. Vinciguerra separate damages for each.

For the reasons set forth above, the jury verdict should be affirmed.

---

24. *Id.* (citing restatement (second) of torts (1977)).
25. *Id.*