2024 PA Super 69

| | | |
|---|---|---|
| HOLLY FISHER, EXECUTRIX OF THE ESTATE OF SANDRA REICHART | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| AMERICAN INTERNATIONAL INDUSTRIES, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST FOR THE CLUBMAN BRAND, AND TO THE NESLEMUR COMPANY AND PINAUD COMPANY, ART OF BUSINESS, INC. F/K/A RAYLON COR, WHITTAKER CLARK AND DANIELS, INC., COLGATE-PALMOLIVE COMPANY, REVLON CONSUMER PRODUCTS CORPORATION, REVLON, INC., BRENNTAG NORTH AMERICA, BRENNTAG SPECIALTIES INC., BRISTOL-MYERS SQUIBB COMPANY, CYPRUS AMAX MINERALS COMPANY, CYPRUS MINES CORPORATION, KOLMAR LABORATORIES, INC. | : : : : : : : : : : : : : : : : : : : : : : : | No. 106 EDA 2023 |
| APPEAL OF: AMERICAN INTERNATIONAL INDUSTRIES | : : : | |

Appeal from the Order Entered December 2, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 190700877

BEFORE: OLSON, J., STABILE, J., and COLINS, J.*

OPINION BY OLSON, J.: **FILED APRIL 10, 2024**

Appellant, American International Industries ("AII"), appeals from the

judgment entered December 2, 2022, awarding damages to Appellee, Holly

---

* Retired Senior Judge assigned to the Superior Court.

Fisher ("Fisher"), Executrix of the Estate of Sandra Reichart ("Decedent"), following a jury trial in this asbestos litigation. We affirm, in part, vacate, in part, and remand with instructions.

The facts and procedural history of this case are as follows. Decedent owned a beauty salon, known as "Sandy's Beauty Shop," and worked as a hairdresser from approximately 1960 through 1985. In her work, Decedent used the following talcum powders: Clubman Talc, Jeris Talc, Jean Nate Talc and Cashmere Bouquet Talc. In January 2019, Decedent was diagnosed with malignant pleural mesothelioma. On February 8, 2019, Decedent died.

On July 8, 2019, Decedent's daughter, Fisher, as the Executrix of Decedent's estate, commenced the present litigation asserting that the aforementioned talcum powders contained asbestos and/or asbestiform materials. In particular, Fisher claimed that, from 1960 through 1985, Clubman Talc, Jeris Talc, Cashmere Bouquet Talc, and Jean Nate Talc, were comprised of asbestos-containing talc from Italy. Fisher further alleged that Decedent's exposure to the asbestos-containing talcum powders caused her to develop mesothelioma, which led to her subsequent death. Fisher brought this action against multiple defendants, including Neslemur Company ("Neslemur"), owner of the Clubman Talc brand until 1987; AII, a product-line successor to Clubman Talc following its acquisition of the brand from Neslemur in 1987 and a product-line successor to Jeris Talc following its acquisition of the brand from Ar. Winarick in 1991; Colgate-Palmolive Company ("Colgate"), the owner and distributer of Cashmere Bouquet Talc; and Whittaker Clark and

- 2 -

Daniels, Inc. ("WCD"), the supplier of the asbestos-containing talc products. At the time of trial, only AII and WCD remained.[1]

The matter proceeded to a jury trial on October 11, 2022. On October 19, 2022, AII filed a motion for nonsuit arguing that Fisher failed to establish that Decedent's use of Clubman Talc caused her mesothelioma. The trial court denied AII's motion. On October 21, 2022, AII moved for a directed verdict on the same grounds, *i.e.*, Fisher failed to establish causation with respect to Clubman Talc. Again, the trial court denied AII's motion.

The jury returned a verdict for Fisher on October 21, 2022. In particular, the jury found that Decedent had mesothelioma (Verdict Question 1); Decedent inhaled asbestos contained in Clubman Talc, as well as asbestos contained in talcum powder distributed by WCD, with "sufficient frequency, regularity, and proximity to be a substantial factor in causing her disease" (Verdict Question 2); AII, on August 17, 1987, acquired "all or substantially all" of Neslemur's manufacturing assets and "continued essentially the same manufacturing operation for the production and distribution" of Clubman Talc (Verdict Question 3); Decedent inhaled asbestos contained in Colgate's Cashmere Bouquet Talc with "sufficient frequency, regularity, and proximity to be a substantial factor in causing her disease" (Verdict Question 9); and Decedent inhaled asbestos contained in Neslemur's products with "sufficient

---

[1] As will be discussed *infra*, Neslemur did not participate in the litigation. Colgate was released prior to trial but ultimately included on the verdict form pursuant to Pennsylvania's FAIR Share Act, 42 Pa.C.S.A. § 7102(a.2).

frequency, regularity, and proximity to be a substantial factor in causing her disease" (Verdict Question 11). The jury determined that Jeris Talc was not one of the talcum powder's that contributed to Decedent's development of mesothelioma (Verdict Question 1). As such, the jury did not determine whether AII, on April 26, 1991, acquired "all or substantially all" of Ar. Winarick's manufacturing assets and "continued essentially the same manufacturing operation for the production and distribution of Jeris [Talc]" (Question 4). Ultimately, the jury awarded $400,000.00 in monetary damages.

AII filed a motion for post-trial relief on October 31, 2022, seeking judgment notwithstanding the verdict ("JNOV"). That same day, Fisher filed a motion for delay damages, asking the trial court to mold the verdict to add delay damages totaling $38,710.22, allocating it on a *pro rata* basis. In addition, Fisher filed a motion for post-trial relief, asking the trial court to enter judgment in "conform[ity] . . . to the jury's findings" and allocate the $400,000.00 award to only AII and WCD in equal shares. Fisher's Post-Trial Motion, 10/31/22, at *6.

The trial court denied AII's motion on November 3, 2022. On December 2, 2022, the trial court granted Fisher's motion for delay damages, stating that "the verdict shall be molded to reflect the addition of delay damages in the amount of $38,710.22, apportioned on a *pro rata* basis." Trial Court Order, 12/2/22, at *1 (unpaginated). That same day, the trial court entered another order, stating:

J-A28007-23

> The jury rendered a $400,000.00 verdict and assessed liability against four defendants: [AII, WCD, Neslemur and Colgate]. Each [of the] Defendant's *pro rata* share of the verdict is one-forth (1/4), or $100,000.00, while each [of the] Defendant's *pro rata* share of the delay of damages is likewise one[-]fourth[,] or $9,677.55. Each [of the] Defendant's *pro rata* share of the verdict plus delay damages is $109,677.55[.]
>
> Defendant[, AII], as successor to Defendant Neslemur, is responsible for Defendant Neslemur's portion of the damages. Defendant [AII's] total portion of the verdict plus delay damages is, therefore, $219,355.10[.] Defendant [WCD's] portion of the verdict plus delay damages is $109,677.55. Defendant [Colgate's] portion of the verdict plus delay damages is $109,677.55.

Trial Court Order, 12/2/22, at *1-*2 (unpaginated) (emphasis added). On December 6, 2022, Fisher filed a praecipe for entry of judgment, asking the court to enter judgment in conformity with its December 2, 2022 order. This timely appeal followed.

AII raises the following issues on appeal:

1. Whether the trial court erred in denying [AII's] motion for nonsuit, motion for directed verdict, and motion for [JNOV] when [Fisher] presented no evidence to the jury, in an asbestos case, that the product for which [AII] was alleged to be liable actually contained asbestos throughout the period of Decedent's alleged use[?]

2. Whether the trial court erred in granting [Fisher's] motion for post-trial relief when [she] had not previously filed a motion for directed verdict, and where the result was to retroactively remove a defendant from the verdict form and assign that defendant's share to [AII], thereby doubling [AII's] share of the verdict?

AII's Brief at 4 (unnecessary capitalization omitted).

- 5 -

In its first issue, AII argues that the trial court erred in denying its motions for nonsuit, directed verdict, and JNOV.[2] AII premises its claims of error on its contention that Fisher presented "no evidence" that Clubman Talc "actually contained asbestos during the period of Decedent's use." AII's Brief at 24. AII notes that Fisher's "entire causation theory" was based upon her allegation that Clubman Talc was "made from asbestos-[containing] Italian talc" but argues that she failed to prove that Clubman Talc was blended with Italian talc. **Id.** Hence, AII claims Fisher failed to establish the "critical first step" in proving causation, *i.e.*, that Clubman Talc contained asbestos. **Id.** at 27. We disagree.

"In reviewing a trial court's decision whether or not to grant a motion for [nonsuit]/directed verdict[/JNOV] in favor of one of the parties, an appellate court must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner." **Moore v. Ericsson**, **Inc.**, 7 A.3d 820, 824 (Pa. Super. 2010). We will reverse a trial court's order granting or denying such motions if we discern an abuse of discretion or an error of law. **See Munoz v. Children's Hosp. of Philadelphia**, 265 A.3d 805, 806 (Pa. Super. 2021) (explaining that the "appellate court must review the evidence" presented during trial and

---

[2] We note that, in prior cases, this Court has held that "[o]nce [a] case proceed[s] to trial and [the a]ppellant present[s] a defense, [a] trial court's refusal to grant . . . a compulsory nonsuit becomes moot." **Whitaker v. Frankford Hosp. of City of Philadelphia**, 984 A.2d 512, 517 (Pa. Super. 2009) (citations omitted). We will, therefore, consider AII's claim that the trial court erred in denying its motions for directed verdict and JNOV.

- 6 -

determine "whether the trial court abused its discretion or made an error of law" in its disposition of a motion for nonsuit); *Hoffa v. Bimes*, 954 A.2d 1241, 1243 (Pa. Super. 2008) (noting that the standard of review of an order granting or denying a motion for nonsuit is identical); *see also Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. 2010) (explaining that an appellate court's standard of review for considering motions for a directed verdict and JNOV are identical: the appellate court will reverse a trial court's ruling if it abused its discretion or committed an error of law).

"To establish causation in an asbestos case[,] the plaintiff must prove the exposure to asbestos caused the injury and that it was the defendant's asbestos-containing product that caused the injury. To satisfy this burden a plaintiff must meet the 'regularity, frequency and proximity' test as articulated by our Supreme Court in *Gregg v. V-J Auto Parts Co.*, 943 A.2d 216 ([Pa.] 2007)." *Moore*, 7 A.3d at 824 (parallel citation omitted). Thus, a plaintiff "must adduce evidence that exposure to [the] defendant's asbestos-containing product was sufficiently 'frequent, regular and proximate' to support a jury's finding that [the] defendant's product was substantially causative of the disease." *Rost v. Ford Motor Co.*, 151 A.3d 1032, 1044 (Pa. 2014) (citation omitted). Importantly, however, if a plaintiff fails to establish that the defendant's product *actually contains* asbestos, "the 'frequency, regularity, and proximity' analysis is not triggered" and causation is not established. *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 576 (Pa. Super. 2014) (upholding the trial court's decision to enter summary judgment

because the plaintiff "failed to establish that [General Electric (GE)] products containing asbestos were present at the worksite" and, as such, the appellant "failed to create an issue of material fact establishing that [the d]ecedent was exposed to asbestos-containing GE products"); *see also Sterling v. P & H Mining Equipment, Inc.*, 113 A.3d 1277, 1283 (Pa. Super. 2015) (holding that the plaintiff "failed to adduce evidence sufficient to support an inference that [the plaintiff] inhaled asbestos from component parts of P & H cranes" rendering summary judgment appropriate).

In pursuing her claim against AII, Fisher did not allege that Clubman Talc, itself, contained asbestos. Instead, Fisher alleged that, during the relevant period (1960 through 1985), Clubman Talc was blended with asbestos-containing talc from Italy. To support this claim, Fisher presented the expert testimony of Mark Krekeler, Ph.D., a geologist that specialized in polysorical minerals. In particular, Dr. Krekeler opined that the talc mined from Val Chisone, Italy, "contained detectable levels of asbestos." N.T. Trial, 10/17/22, at 40. Dr. Krekeler based his opinion on, *inter alia*, documentation from various companies indicating that asbestos was present in the talc mined from Val Chisone, Italy. **Id.** at 34; **see also id.** (citing a document from Johnson & Johnson, Inc. indicating that, in the 1950s through the late 1970s, it commonly found tremolite, actinolite, and chrysotile asbestos in the talc mined from Val Chisone, Italy); (citing a document from Johns Manville indicating that, in 1973, it found 1900 chrysotile fibers per milligram in the

talc mined from Val Chisone, Italy); (citing a document from WCD indicating that, in 1972, it found asbestos in the talc mined from Val Chisone, Italy).

Then, Fisher presented, *via* videotaped deposition, the testimony of Donald Ferry. Initially, Ferry testified that he worked as a sales agent for Charles Mathieu, Inc., an entity that purchased Italian talc from the Val Chisone region. Ferry stated that, from "roughly the 1950s through the 1960s," he sold the Italian talc from the Val Chisone region to Neslemur. Donald Ferry Deposition, 6/8/15, at 8. Ferry further testified that, at an unspecified time, Charles Mathieu began using WCD as an agent to sell the Italian talc from the Val Chisone region to "smaller users," including Neslemur.[3] *Id.* at 5. This testimony was later corroborated by the introduction of certain sales records from WCD. In particular, by stipulation, Fisher introduced records reflecting sales in 1981 and 1982 of Italian talc

---

[3] Donald Ferry testified that Neslemur produced Jeris Talc. Other evidence and testimony, however, was that Ar. Winarick owned and distributed Jeris Talc until the brand was purchased by AII in 1991. Donald Ferry, however, clearly testified that, starting in the 1950s, he worked as a sales agent that exclusively sold Italian talc from the Val Chisone region to Neslemur. Hence, the jury was free to disregard his testimony indicating which product Neslemur owned and credit his testimony that he sold Italian talc from the Val Chisone region to Neslemur during the relevant time period. *See Mader v. Duquesne Light Company*, 241 A.3d 600, 617 (Pa. 2020) ("[T]he jury is free to believe all, part, or none of the evidence, and resolving conflicts in testimony are within the exclusive province of the jury.").

from the Val Chisone region from WCD to Neslemur.[4]  ***See*** N.T. Trial, 10/19/22, at 60-62.

Importantly, and in contrast to AII's claims on appeal, there was evidence presented during trial which demonstrated that the Italian talc from the Val Chisone region was, in fact, blended with Clubman Talc.  In particular, AII's corporate representative, Charles Loveless, testified that, after AII purchased the Clubman Talc brand from Neslemur in 1987, it received certain documents from Neslemur, including formula cards.  One such formula card from January 1973 specified "Italian talc."  ***Id.*** at 15.  Even though Loveless testified that the aforementioned formula card included the "last reference" to Neslemur's use of Italian talc, other evidence showed detectable asbestos fibers in Clubman Talc following January 1973.  ***Id.***  In particular, Loveless admitted that, in 1976, the Division of Cosmetics Technology of the Food and Drug Administration ("FDA") tested various products, including Clubman Talc, and detected 9,000 tremolite fibers per milligram therein.  ***See*** N.T. Trial, 10/18/22, at 86.

A review of the foregoing demonstrates AII's claim that Fisher failed to introduce sufficient evidence to prove that Clubman Talc contained asbestos

_____

[4] On appeal, AII contends that WCD's sales records were introduced against WCD only, not AII.  AII's Brief at 9-10.  A review of the trial transcripts, however, reveals that Fisher introduced the sales records at the close of her case-in-chief and did so *via* a stipulation.  ***See*** N.T. Trial, 10/19/22, at 60-62. The trial court was neither requested nor did it provide a limiting instruction to ensure that the jury considered the sales records against WCD only.  ***Id***. Hence, AII's contention is belied by the record.

lacks merit. Indeed, Dr. Krekeler's expert testimony clearly established that the talc mined from Val Chisone, Italy, contained asbestos. In addition, Donald Ferry's testimony demonstrated that, starting in the 1950s, Charles Mathieu sold asbestos-containing Italian talc from the Val Chisone region to Neslemur and that, eventually, Charles Mathieu turned such sales over to WCD, who continued selling asbestos-containing Italian talc from the Val Chisone region to Neslemur until 1982. Finally, the evidence introduced during Loveless's testimony demonstrated that, Neslemur's formula cards, until at least January 1973, referred to asbestos-containing Italian talc from the Val Chisone region and that, in 1976, testing of Clubman Talc by the FDA detected traces of asbestos. Thus, when we consider the evidence in a light most favorable to Fisher, as the verdict winner, together with all favorable inferences, we conclude that Fisher presented sufficient evidence that, from at least 1960 through 1976, Clubman Talc was blended with asbestos-containing Italian talc from the Val Chisone region.

In its second issue, AII challenges the trial court's disposition of Fisher's post-trial motion filed pursuant to Pa.C.R.P. 227.1. We will reverse a trial court's order granting or denying a party's post-trial motion if we determine an abuse of discretion or an error of law. ***United Env't Grp., Inc. v. GKK McKnight, LP***, 176 A.3d 946, 965 (Pa. Super. 2017)

In her post-trial motion, Fisher asked the trial court to "enter an order confirming the judgment [entered] to the jury's findings in this case." Fisher's Post-trial Motion, 10/31/22, at *1 (unpaginated). In particular, Fisher asked

- 11 -

the trial court to enter judgment in "conform[ity] . . . to the jury's findings" and allocate the $400,000.00 award to only AII and WCD in equal shares. **Id.** at *6. In support of her request, Fisher pointed to the fact that the jury was asked and, ultimately, determined that AII "was the successor to Neslemur for liabilities associated with [] Clubman [Talc]," and, in so doing, determined that "AII's acquisition of the brand brought about the virtual destruction of [Fisher's] remedies against Neslemur." **Id.** at *1. Because Clubman Talc was the only product for which Neslemur could be held liable, Fisher claimed that the jury's subsequent determination that a "Neslemur talc product contributed to [Decedent's] mesothelioma" was superfluous and, therefore, no judgment should be entered against Neslemur. **Id.** at *2. In addition, Fisher asked the trial court not to enter judgment against Colgate, claiming that "the jury did not make a legally sufficient finding as to liability on the part of Colgate for its Cashmere Bouquet [Talc]." **Id.** Ultimately, the trial court granted Fisher's motion, in part, concluding that AII, "as a successor to [] Neslemur," was "responsible for [its] portion of the damages." Trial Court Order, 12/2/22, at *2 (unpaginated). The trial court, therefore, apportioned one-half (1/2) of Fisher's damages to AII, one-fourth (1/4) to WCD, and one-fourth (1/4) to Colgate. **Id.**

On appeal, AII contends that the trial court erred in granting Fisher's post-trial motion, thereby "giving [AII] a [one-half] share of the verdict." AII's Brief at 31. First, AII argues that Fisher's post-trial motion was "procedurally barred" because she failed to "move for a directed verdict at the close of

evidence." *Id.* at 25. Second, AII claims the trial court's modification was erroneous because the jury found four entities, AII, WCD, Neslemur and Colgate, responsible for Decedent's disease and subsequent death. Thus, AII contends that "[e]ach joint tortfeasor is responsible for an equal share of the verdict," *i.e.*, one-fourth of the verdict *Id.* at 34. Finally, AII argues that, even "if Neslemur is taken out of the equation, post-verdict, then dividing the award *pro rata*" means splitting the verdict against the remaining three tortfeasors – AII, WCD and Colgate – resulting in the allocation of one-third of the verdict share to AII. *Id.* at 34-35. We will address each of AII's claims in turn.

AII's first claim of error revolves around its belief that Fisher was procedurally barred from seeking post-trial relief. In support of this assertion, AII relies on Pa.R.C.P. 227.1 which, in relevant part, states:

(a) After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) affirm, modify or change the decision; or

(5) enter any other appropriate order.

(b) Except as otherwise provided by Pa.R.E. 103(a), post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

- 13 -

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

*Id.* Because Neslemur was a defendant in this matter and included on the verdict sheet, AII claims that Fisher waived her claim for relief because she failed to move for a directed verdict "before the jury was discharged." AII's Brief at 33.

A review of the certified record reveals that, in contrast to AII's claims, Fisher's counsel objected to the inclusion of a question regarding Neslemur's liability during the charge conference at trial, which included a discussion of what was to be included on the verdict slip. The relevant transcripts provide:

> **The [c]ourt:** The question is out. Let's move on to 13, 14, and 15. 13 and 14 were questions that the plaintiff wanted out on your verdict sheet. 13 and 14 regarding Neslemur and Jean Nate [Talc]. I can see the relevance of those questions on the jury's verdict.
>
> ***
>
> **[Fisher's counsel]:** Just note our objection regarding the Neslemur question, Your Honor.
>
> **The [c]ourt:** That [is] question number 14?
>
> **[Fisher's counsel]:** Right.
>
> **The [c]ourt:** Yes, you have an objection to 14. Defense, you want it in, correct? You submitted it. Certainly, Neslemur was a huge part of this case. And I understand – I think that the question is relevant to – I mean, plaintiff, if you want to try to explain to me why it should [not] be in there?
>
> **[Fisher's counsel]:** Because the theory is, if the jury already answers that AII is the successor to Neslemur, there [is] no need to confuse them with any sort of exposure to Neslemur,

- 14 -

holding Neslemur liable. They [have] already determined that they are the product line successor and therefore liable for Neslemur. So to then subsequently ask questions about liability with regard to Neslemur, it contradicts the finding of the product line –

**The [c]ourt:** But you remember, I wanted to put successor liability right after that. That [is] what I [am] saying. They had successor liability early on the verdict sheet. I though successor liability should go right after those questions.

**[Fisher's counsel]:** I understand.

N.T Trial, 10/20/22, at 131-132. Importantly, Rule 227.1(b) explicitly states that a party may preserve a claim for post-trial relief by raising a claim, if available, *via* "motion, **objection** . . . or other appropriate method at trial." Pa.R.C.P. 227.1(b)(1) (emphasis added). We therefore conclude that AII's claim that Fisher's post-trial request for relief was procedurally barred is belied by the record.

Next, AII argues that Neslemur, as a defendant, should be responsible for one-fourth of the share of the verdict. In support of this claim, AII argues that, during trial, there was testimony indicating that Neslemur owned Jeris Talc, as well as Clubman Talc. As such, AII claims that the trial court erred in presuming that "the jury's finding against Neslemur was related to Clubman Talc." AII's Brief at 34.

AII correctly points out that, during Donald Ferry's testimony, he stated that Neslemur produced Jeris Talc, even though other evidence and testimony demonstrated that Jeris Talc was a product originally produced by Ar. Winarick and purchased by AII in 1991. Despite this testimony, the jury found that

- 15 -

Decedent was not exposed to asbestos contained in Jeris Talc. Importantly, the jury was free to reject Ferry's testimony that Neslemur made Jeris Talc and, furthermore, conclude that Jeris Talc did not cause Decedent's illness. *See Mader*, *supra* at 617 (explaining that the jury was "free to believe all, part, or none of the evidence, and resolv[e] conflicts in testimony are within the exclusive province of the jury"). Hence, AII is essentially asking this Court to reweigh the jury's findings, which we are unable to do. *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (reiterating it is not position of this Court to "reweigh the evidence or substitute our own judgment for that of the factfinder"). Moreover, a fair reading of the jury verdict demonstrates that the jury could not have found Neslemur liable based upon a finding that it produced Jeris Talc because they explicitly determined that Jeris Talc was **not** a talc or talcum powder from which Decedent inhaled asbestos with sufficient regularity, frequency, and proximity to be a substantial factor in causing her disease. *See* Verdict Sheet, 10/26/22, at 1. Thus, AII's claim fails.

Finally, AII argues that, even if Neslemur were permissibly removed from the verdict form, the trial court erred in assigning AII one-half of the total verdict, as opposed to one-third. We agree.

Our Supreme Court recently explained how liability is to be apportioned in a strict liability asbestos case. *See Roverano v. John Crane*, 226 A.3d 526 (Pa. 2020). The *Roverano* Court stated that, in accordance with the plain language of the Fair Share Act, 42 Pa.C.S.A. § 7102, liability is to be

apportioned on a *per capita* basis. ***Id***. at 527-528. The Court reasoned that, in strict liability asbestos matters, the alleged injury is "inherently a single, indivisible injury that is incapable of being apportioned in a rational manner" and, as such, "it is impossible to determine which actor caused the harm, [and] it follows that it is impossible to apportion the amount of each defendant's liability on a percentage basis." ***Id***. at 510.

Upon review, we hold that, while the trial court correctly determined that judgment should not be entered against Neslemur, it erroneously assigned AII one-half of the total verdict. As discussed above, Neslemur originally sold and produced Clubman Talc. In 1987, however, AII purchased the Clubman brand from Neslemur, which was after Decedent's relevant exposure period (1960-1985). Thus, the sole basis for AII's liability was Fisher's claim that it constituted a product-line successor to Neslemur for Clubman Talc, which the jury ultimately found. This finding, therefore, also implicitly recognized that AII's acquisition of the Clubman Talc virtually destroyed Fisher's remedies against Neslemur. ***See Keselyak v. Reach All, Inc.***, 660 A.2d 1350, 1354 (Pa. Super. 1995) (holding that, because the plaintiff's claim against the original manufacturer was not destroyed by the successor corporation's acquisition of the product, the product-line exception did not apply to impose liability on the successor corporation). Upon recognition of this fact, the trial court decided to "add" Neslemur's purported liability to AII. This was error. Instead, pursuant to ***Roverano, supra***, the trial court should have simply removed Neslemur's portion of liability and, in

turn, apportioned liability on a *per capita* basis to the remaining three tortfeasors, AII, WCD and Colgate. Thus, we are constrained to vacate the trial court's December 2, 2022 judgment order.

We therefore affirm the trial court's order denying AII's motion for non-suit, directed verdict and JNOV. We vacate the trial court's December 2, 2022 order entering judgment against AII, WCD and Colgate and assigning AII a one-half share, WCD a one-fourth share and Colgate a one-fourth share of the verdict. We order the trial court to enter judgment on a *per capita* basis against AII, WCD and Colgate consistent with this opinion.

Affirmed in part. Vacated in part. Remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/10/2024